Glenn J. and Evelyn P. TWIST and William J. Burkes, Building Superintendent, Plaintiffs in Error,

v.

William E. KAY, Defendant in Error.

No. 41498.

Supreme Court of Oklahoma.

Sept. 19, 1967.

P. M. Williams, Roy H. Semtner, by James G. Hammill, Oklahoma City, for plaintiffs in error.

Cantrell, Douglass, Thompson & Wilson, by Kenneth J. Wilson, Oklahoma City, for defendant in error.

DAVISON, Justice.

Defendant in error, William E. Kay, hereinafter referred to as petitioner, as owner of Lot Eleven (11) of Block 111, in Nichols Hills Suburban Tracts Addition to Oklahoma City, Oklahoma, (9208 North May Avenue) filed his application with the City Building Superintendent of Oklahoma City (William J. Burkes), as respondent, requesting that he be issued a building permit to erect a one story addition to his property and alter and convert the existing residence thereon to a one story office building. Petitioner's application was denied.

Petitioner appealed to the Board of Adjustment of the City of Oklahoma City for a variance to the terms of the involved city zoning ordinance (No. 13.3.04, providing zoning for only single family dwellings), alleging a change of condition surrounding his property, in that said property was now virtually surrounded on three sides by commercial usage, so that the existing residential property was no longer usable or desirable for residential purposes and that a strict application of the ordinance would result in peculiar and exceptional practical difficulties and undue hardship on petitioner. He further alleged that the described condition was not generally prevalent in the zoned neighborhood.

Petitioner's appeal to the Board of Adjustment was heard and denied by said Board and thereafter petitioner timely lodged his appeal to the District Court. The District Court granted leave to Glenn J. Twist and Evelyn P. Twist to intervene as additional respondents.

After a full hearing in the District Court that court entered its judgment granting petitioner a variance to the involved zoning ordinance and authorized petitioner to build a one story office building on said lot according to specified limited rules as set forth in the journal entry.

On appeal to this court the defendant in error will be referred to as petitioner and the plaintiffs in error will be referred to as respondents.

The respondents raise three questions of law for reversal as follows:

"1. As Specification of Error 1, Proposition 1, they maintain that neither the Board of Adjustment nor the District Court on appeal therefrom, has jurisdiction to grant a variance to the zoning ordinances of the City of Oklahoma City.

"2. As Specification of Error 11, Proposition 1, they again maintain that both the Board of Adjustment and District Court are without jurisdiction to grant such variance.

"3. As Specification of Error 11, Proposition 2, they contend that if the District Court did have jurisdiction to grant a variance, the evidence here was insufficient to justify the granting of same."

The first two propositions are so closely related that they can be treated together.

The creation by the legislative body of a municipality of a Board of Adjustment in cities is authorized under and by virtue of 11 O.S.A., § 407, 1923, and among its powers granted thereunder is included the power:

"(3). To authorize upon appeal in specific cases such variance from the terms of the ordinance as will not be contrary to the public interest, where owing to special conditions a literal enforcement of the provisions of the ordinance will result in unnecessary hardship, and so that the spirit of the ordinance shall be observed and substantial justice done.'"

The statute providing for appeals from the Board of Adjustment is 11 O.S.A., § 408, 1923, and states in part as follows:

"Such legislative body shall by ordinance provide for appeals * * * from the Board of Adjustment to the district court of the county in which such municipality is located, * * *"

In 1947 the legislature passed an Act, being 11 O.S.A., § 1411 et seq., which related to cities having a population of not less than 160,000. Respondents argue that Section 1434 of this Act provides for judicial review without requiring the matter be first submitted to the Board of Adjustment. Attorneys for respondents state in their brief that:

"This distinguishes the two Acts markedly by placing a more strict burden on the Oklahoma City citizen because he must allege he has been treated arbitrarily, or capriciously, or unreasonably and that he has suffered hardship; whereas, in a Board of Adjustment appeal, a proof of hardship is usually the basis for granting relief."

We are of the opinion that the above construction of Section 1434 is erroneous. The above construction is based on the word *and* while the statute uses the word *or*. Section 1434 is as follows:

"A judicial review in the District Court may be had of any ruling, regulation, interpretation, order, requirement, refusal, permit, approval, or decision made under the terms of this Act, when such action is alleged to be arbitrary, unreasonable or capricious, and that by reason thereof such action has, or if enforced, will work an unnecessary hardship on or create substantial harm or loss to the complaining party."

The statutory authority (11 O.S.A., § 1411 et seq., 1947) has been implemented by Revised Ordinances of 1960 of the City of Oklahoma City in part as follows:

"13.19.05 Powers. The Board of Adjustment shall have the following powers: * * *

"B. Powers Relative to Variations. Where, by reason of exceptional narrowness, shallowness, or shape of a specific piece of property at the time of the original adoption of the regulations, or by reason of exceptional topographical conditions or other extraordinary or exceptional situation or condition of a specific piece of property, which condition is not generally prevalent in the neighborhood, the strict application of this ordinance would result in peculiar and exceptional practical difficulties to or exceptional and undue hardship upon the owner of such property, the Board is hereby empowered to authorize upon an appeal relating to such property, a variation from such strict application so as to relieve such difficulties or hardship."

This section of the Ordinance further provides for a variance under change of conditions where:

"* * * the strict application of this ordinance would result in peculiar and exceptional difficulties to or exceptional and undue hardship upon the owner of such property, * * *"

Ordinance 13.19.07 (Oklahoma City 1960) provides:

"An appeal from any action, decision, ruling, judgment or order of the Board of Adjustment may be taken * * * to the District Court * * *."

This court came to grips with the question of the jurisdiction of the District Court, and of the Board of Adjustment, to grant a variance to the zoning ordinance of Oklahoma City in the case of Oklahoma City et al. v. Harris et al., 191 Okl. 125, 126 P.2d 988. This case construed the 1923 Act, 11 O.S.A., § 407. This case held that the Board of Adjustment was empowered, in proper cases, to make proper adjustment and create a variance to the ordinances to prevent unnecessary hardships. The case further held that the power and authority of the Board to determine the question of a right to a variance was not a delegation of legislative authority, but that the Board performed in a quasi judicial functional capacity. This case further held:

"Where the literal enforcement of an ordinance would result in unnecessary

hardship, the Board of Adjustment may vary the application of such ordinance in a particular case, so that substantial justice may be done, in such manner and to such extent as will not be contrary to the public interest or the spirit of the ordinance."

Respondents state, however, that the Harris case, supra, was promulgated at a time when the 1923 Act was in effect, and that under the 1947 Act, supra, the Board of Adjustment was deprived of jurisdiction to determine the question before us. Respondents state that since the passage of the 1947 Act the involved question is one of first impression.

This court has considered several cases since the passage of the 1947 Act, wherein the Boards of Adjustment have had occasion to pass on the questions of variances to zoning ordinances. Application of Shadid, 205 Okl. 462, 238 P.2d 794; Appeal of John L. Pierce from Ruling of Board of Adjustment of City of Tulsa, Okl., 347 P.2d 790.

In the Shadid case, supra, the lot owner's application was for a permit to erect a building enlarging his grocery store located in a district zoned for dwellings. Following appeals from the denials of the permit by the City Building Superintendent and the Board of Adjustment, the District Court, after a hearing, denied the application. The applicant appealed to this court. The judgment was affirmed only because of insufficient evidence to support the granting of a variance.

In the Shadid case, supra, this court did not say that the Board of Adjustment did not have authority to grant an exception or variance to the existing zoning ordinances under proper and sufficient circumstances. In that case we stated:

"Before the Board of Adjustment has authority to make an exception to, or allow a variance from, the zoning ordinance of Oklahoma City, the person claiming the exception or variance has the burden of showing (a) that the granting of the permit will not be contrary to the public interest, (b) that the literal enforcement of the ordinance will result in unnecessary hardship, (c) that by granting the permit contrary to the provisions of the ordinance, the spirit of the ordinance will be observed, and (d) that by granting the permit, substantial justice will be done."

The Shadid case, supra, is similar to the case at bar in another respect. In the Shadid case it is pointed out that "Applicant makes no attack on the validity of the ordinance but says that a variance or exception under the ordinance should be granted to him." In the present case the petitioner does not attack the validity of the ordinance but only seeks a variance of the ordinance to relieve him of undue hardship.

The John L. Pierce case, supra, involved an appeal to the District Court, by an apartment owner, from an order of the Board of Adjustment of the City of Tulsa refusing to grant his application for a variance to the applicable zoning ordinances. The District Court reversed the order of the Board and granted the requested variance. The Board appealed to this court and the judgment of the District Court was reversed and the application for a variance was denied on the rule of law that the alleged hardship was created by the owner of the premises and by reason thereof constituted no valid reason for granting the variance.

We are of the opinion that the Legislature, by the 1947 Act, did not intend to divest the Boards of Adjustment from jurisdiction in cases such as is involved herein. 11 O.S.A., § 1432, states in part, as follows:

"From any order, regulation or action of a Board of Adjustment as provided in this Section, appeals may be taken *as now provided* by law for appeals from orders of the Board of Adjustment *in zoning cases.*" (Emphasis ours)

Under the law and the statutes, supra, an aggrieved property owner may follow two separate methods to secure relief. One, he

could ask to strike down the ordinance as being arbitrary, unreasonable or capricious, or two, he could ask for an exception or variance to the ordinance where, if literally enforced, it would work an unnecessary hardship or create substantial harm or loss to him.

Respondents further complain that the statute gives the Board of Adjustment only the jurisdiction over building or set back regulations. It is true that the Board has jurisdiction over building and set back regulations. However, the legislative Act does not confine the jurisdiction of the Board to only those regulations. If the Legislature had intended to limit the jurisdiction of the Board to only building and set back regulations, it could have done so by using the word "only."

Furthermore the cases of Shadid, supra, and John L. Pierce, supra, in dealing with the involved statutes, were not considering cases involving only building and set back regulations. The Shadid case was adopted in 1951 and the Legislature has not since seen proper to limit the jurisdiction of the Board.

■ We are of the opinion and hold that the Board of Adjustment had jurisdiction over the involved subject matter and that being so, the District Court on appeal had jurisdiction to determine the matter.

Respondents' last assignment of error pertains to the sufficiency of the evidence to support the granting of the variance to the involved ordinances. A number of exhibits were introduced, including pictures of the surrounding neighborhood, and including a drawing of the outside plans for the one story office building. Also considerable oral testimony was introduced.

The evidence shows that the lot in question is located on the corner of Croyden Court and May Avenue, it being the farthermost lot at the extreme northwest corner of the involved zoning district. The zoning district comprises a rather large area, containing many lots.

The evidence further shows that between the time of the passage of the zoning ordinance in question and the time of trial petitioner's property had been surrounded on a portion of three sides by commercial buildings and enterprises thereby creating a general change in the usefulness of his property which was not generally prevalent in other property involved in the zoning ordinance.

The evidence shows that immediately south of petitioner's property a dog kennel was in operation, where a number of English Bulldogs were maintained; that the owner of the kennel had a City Kennel License, and maintained a "Puppy sign" in their front yard; that commercial business had continued to grow and increase on property near petitioner's property so that at the time of trial just immediately north of petitioner's property a Dairy Boy Drive-In was in operation, and a nursery directly across the street north of the petitioner's property; that a number of filling stations are located in the immediate vicinity of petitioner's property; that on the west side of his property, across May Avenue, a tract of approximately 40 acres has been zoned for retail business; that petitioner's home is no longer valuable for residential property and the home place had been vacant for over half a year next preceding the trial because of lack of renters; that May Avenue (abutting avenue) is a busy thoroughfare and accommodates a number of business enterprises located thereon for several blocks north of petitioner's property.

Mrs. Gilmore, who lives in the residence next door to petitioner's property, testified that petitioner was out of the State a part of the time and she tried to rent the property for petitioner; that she ran "for rent" ads in the Daily Oklahoman during May, June and July preceding the trial; that she had about a hundred calls as a result of the ads and that she showed the property sixty or seventy times but that she couldn't rent the property "because of the business-

es, people with small children and the dog kennel with the dogs and the odor and noise and the busy streets around the property and it just made it undesirable."

The witness Paul Clowers, called by petitioner, testified that he was a civil engineer and at the time was a Planning Director for Oklahoma City; that he thought the property was suited for some type of office development; that it would be good planning to permit an office building on the property; that the one story office building would be in the best interests of the neighborhood because of the commercial zoning to the north and to the west and the daily increase of traffic on May Avenue.

A. G. Meyers, Jr., testifying for petitioner, stated he had been in the real estate and construction business in Oklahoma City for 22 years; that the property as it now exists has no rental value; that he has seen the plans and drawings of the proposed office building and that the construction of the building would raise the value of the abutting property; that he at one time had served on the Board of Adjustment in Oklahoma City.

The evidence of the three witnesses for the respondents was to the effect that they lived in close proximity to the proposed office building and that such a building would decrease the value of their property.

■ Such proceeding before us is characterized as equitable in nature, and the question to be determined is whether the judgment of the trial court is consonant with or against the clear weight of the evidence. City of Tulsa v. Swanson, Okl., 366 P.2d 629.

■ We find and hold that the judgment of the trial court is not against the clear weight of the evidence, and meets the requirements contained in the Shadid case, supra.

Judgment affirmed.

JACKSON, C. J., IRWIN, V. C. J. and WILLIAMS, BLACKBIRD, BERRY, HODGES and LAVENDER, JJ., concur.

McINERNEY, J., concurs in result.