J. T. BROWN, Building Superintendent, Plaintiff in Error,

v.

Russell FRASER, Defendant in Error.

No. 42389.

Supreme Court of Oklahoma.

March 24, 1970.

Roy H. Semtner, Municipal Counselor, Irving L. Faught, Asst. Municipal Counselor, Oklahoma City, for plaintiff in error.

McClelland, Collins, Sheehan, Bailey & Bailey, by H. B. Scoggins, Jr., Oklahoma City, for defendant in error.

LAVENDER, Justice.

This is an appeal from the District Court of Oklahoma County, Oklahoma. The proceeding in the district court was an appeal, by the defendant in error herein, Russell Fraser, from an order of the Board of Adjustment of the City of Oklahoma City, Oklahoma. That order denied his request for a 3,000-square-foot variance from the "Intensity of Use" provision of that city's 1947 zoning ordinance (No. 5936) as applied to his separately-owned 3,000-square-foot tract of vacant land in an " 'A' Single Family Dwelling District" established by that ordinance. The district court found, ordered and adjudged that such order of the Board of Adjustment should be overruled, vacated and set aside, and that the requested variance should be granted so that Fraser could be permitted to construct a single-family dwelling upon such tract of land.

J. T. Brown, as Building Superintendent of the City of Oklahoma City, appeals to this court, contending, among other things, that Fraser had failed to sustain the burden of proof imposed upon him by pertinent legal principles. We agree with that contention.

The tract of land involved herein is described in the request for such variance as the South 60 feet of Lots 17 and 18 in Block 16 of Military Park Addition. Fraser had acquired the title to all of said Lots 17 and 18 on October 8, 1963, and the separately-owned tract involved herein resulted from Fraser's conveyance, on January 29, 1965, of the North 120 feet of those platted lots.

Then, in June of 1965, Fraser applied to the office of the city's Building Superintendent for a building permit to construct, on this 3,000-square-foot tract of land, a building to be occupied as a single-family dwelling. The Building Superintendent denied the building permit, in writing, on the stated ground that the same would be in violation of the zoning ordinance in that the described tract did not have the required land area.

As authorized by the zoning ordinance, Fraser appealed to the Board of Adjustment from that order and, in connection therewith, requested the variance involved herein. After notice and hearing thereon, that Board entered its order denying the variance and building permit, and Fraser appealed to the district court.

The ordinance provision directly involved herein (which later appears as paragraph 4 of Section 5.04 of Title 13, "Revised Ordinances, 1960, of the City of Oklahoma City") applied to, and only to, " 'A' Single Family Dwelling Districts." It reads as follows:

"Intensity of Use. There shall be a lot area of not less than six thousand (6,000) square feet, *except* that where a lot has less area than herein required and all the boundary lines of that lot touched lands under other ownership *on the effective date of the ordinance* that

lot may be used for any of the uses permitted by this section." (Emphasis supplied)

Concerning such use, the same section of the ordinance provides (insofar as pertinent herein) that:

"A building or premises in the 'A' Single Family Dwelling District shall be used only for the following purposes:

"1. Single Family Dwelling.

" * * *

"6. Accessory buildings which are not a part of the main building, including a private garage, and including one living unit, which living unit shall not exceed one floor level of living space, nor exceed five hundred square feet (500 sq. ft.) of floor area, * * *; provided, that no permit shall be issued for the construction of such a living unit and no living unit shall be constructed unless the application for such building permit shall be accompanied by the written consent properly signed by at least sixty (60%) of all persons owning property in the block in which the property covered by the application is located; and, provided further, that the construction of such a structure does not violate any other zoning restriction relating to height, yard space, set back, or other requirements. * * *."

Apparently, Oklahoma City's power concerning zoning is derived from the Oklahoma statutes now appearing as 11 O.S. 1961, § 401 and following, rather than from the city's charter. As authorized by one of those statutes (11 O.S.1961, § 407), and in harmony therewith, Oklahoma City's zoning ordinance creates a Board of Adjustment, and, insofar as pertinent herein, provides (in Section 19.65 of Title 13) that:

"The Board of Adjustment shall have the following powers:

"(a) To hear and decide appeals where it is alleged there is an error in any order, requirement, decision, in the enforcement of this ordinance.

"(b) Powers Relative to Variations. Where, by reason of exceptional narrowness, shallowness, or shape of a specific piece of property at the time of the original adoption of the regulations, or by reason of exceptional topographical conditions or other extraordinary or exceptional situation or condition of a specific piece of property, which condition is not generally prevalent in the neighborhood, the strict application of this ordinance would result in peculiar and exceptional practical difficulties to or exceptional and undue hardship upon the owner of such property, the Board is hereby empowered to authorize upon an appeal relating to such property, a variation from such strict application so as to relieve such difficulties or hardship.

" * * *."

■ Before a board of adjustment, or a district court on appeal therefrom, has authority to grant an exception to, or a variance from, the provisions of a zoning ordinance, the person claiming the exception or variance has the burden of showing (a) that the granting of the exception or variance will not be contrary to the public interest, and (b) that the literal enforcement of the ordinance will result in unnecessary hardship to the applicant, and (c) that by granting the exception or variance the spirit of the ordinance will be observed, and (d) that by granting the exception or variance substantial justice will be done. Board of Adjustment of Oklahoma City et al. v. Shanbour (1967), Okl., 435 P.2d 569; Twist et al. v. Kay (1967), Okl., 434 P.2d 180.

In Van Meter et al. v. H. F. Wilcox Oil & Gas Company et al. (1935), 170 Okl. 604, 41 P.2d 904, 910, this court quoted, with approval, from the case of Heffernan v. Zoning Board of Review, 50 R.I. 26, 144 A. 674, 676, as follows:

" 'The expressions "contrary to the public interest" and "unnecessary hardship" must be given a reasonable interpretation. *As the provisions of the or-*

*dinance represent a declaration of public interest, any variance would in some measure be contrary thereto.* In this connection, the words "contrary to the public interest" should be interpreted to mean what in the judgment of a reasonable man would *unduly, and in a marked degree,* conflict with the ordinance provisions. As to the words, "unnecessary hardship" it may be said that each of the restrictions of the ordinance upon what would otherwise be a lawful use of one's property might be termed a "hardship" to the owner. We regard the term "hardship," as used in the ordinance, to have some reference to the degree of interference with ordinary legal property rights, and to the loss or hardship which would arise therefrom. We think the expression should be interpreted to refer to a "hardship" peculiar to the situation of the applicant, which is of such a degree of severity that its imposition is not necessary to carry out the spirit of the ordinance, and amounts to a substantial and unnecessary injustice to the applicant. * * *.' "

■ As we understand it, the granting or refusal of a requested variance from a provision of a zoning ordinance, on the ground of unnecessary hardship resulting to the applicant from a strict application of such provision of the ordinance to his particular situation, is basically and primarily a matter of doing substantial justice as between the applicant and the public interest as declared in the zoning ordinance. And, as we understand the above-cited cases, all of the factors mentioned above are so interwoven that there is no showing of "unnecessary hardship" requiring, or even justifying, the granting of the requested variance from a provision of a zoning ordinance unless the applicant for such variance shows that, as applied to him, such provision interferes with his ordinary legal property rights in a way that is peculiar to his situation and in such a degree of severity that its application to him is not necessary to carry out the spirit of the ordinance, so that, by granting the

requested variance, substantial justice will be done without unduly, or in a marked degree, conflicting with the public interest, as declared in the ordinance.

We have not been favored with the definition, if any, of the term "lot," as used in the Oklahoma City zoning ordinance, but the parties hereto seem to assume that the separately-owned plot of land for which the variance is sought in this case would constitute a "lot" within the contemplation of the provisions of such ordinance, including the "density of use" regulation from which such variance is sought.

Fraser does not base his request for a variance upon exceptional narrowness, shallowness, or shape of this piece of property at the time of the original adoption of this ordinance, or upon exceptional topographical conditions affecting this piece of property but not generally prevalent in the neighborhood. Apparently, Fraser would experience no practical difficulties in constructing his proposed building on this piece of property in compliance with the openspace (front yard, side yard, and rear yard) requirements of the ordinance, and his only practical difficulty is that he has a lot area of only 3,000 square feet instead of the lot area of not less than 6,000 square feet which is required by the ordinance except where all the boundary lines of the lot involved touched lands under other ownership on the effective date of the ordinance.

In an attempt to prove his allegation, in his notice of appeal to the district court, that refusing the requested variance and permit puts a restriction upon this piece of property which is not prevalent in the immediate neighborhood, and apparently to show that he was not seeking to create a new and different situation in the neighborhood, Fraser introduced evidence that, in Block 16 and the blocks adjoining Block 16, there was one "apartment," at least two store buildings, and a number of duplexes, located upon pairs of lots similar to Lots 17 and 18 in Block 16, and at least nine instances in which two structures are

located upon such a pair of lots, four instances in which three structures are located upon such a pair of lots, and one instance in which four structures are located upon such a pair of lots. However, he testified on cross-examination that, with few exceptions (the number thereof not specified), that same situation existed prior to 1947. A witness for the other side, who had owned and resided in a single-family dwelling in Block 16 since some time in 1947, testified that he knew of only one instance in which any structural change had been made in any building, or on any property, in the neighborhood since he moved there.

At any rate, there is nothing in the record to indicate that there was a single instance in which any structure of any kind in that neighborhood was located upon a separately-owned plot of less than 6,000 square feet in area.

Fraser also attempted to show that he had been misled by two employees of the city's Building Superintendent, but the conversations upon which he relied occurred long before Fraser sold the North 120 feet of these two lots and involved an entirely different situation.

■ There is nothing in the record to show that any "hardship" imposed upon this applicant as the owner of a 3,000-square-foot "lot" in an " 'A' Single Family Dwelling District" is any different than that imposed upon any other owner of a 3,000-square-foot "lot" in the same, or any other, " 'A' Single Family Dwelling District" in the city, so that such "hardship" would be peculiar to him in any way. Unquestionably, the requested variance from the "Intensity of Use" requirement that there shall be a lot area of not less than 6,000 square feet except where all the boundary lines of the lot involved touched lands under other ownership on the effective date of the ordinance, so that this applicant might use this separately-owned 3,000-square-foot lot for single-family dwelling purposes, would unduly, and in a very marked degree, conflict with that specific provision of the ordinance, and would be against the public

interest as declared therein, as well as contrary to the spirit of the ordinance as indicated by the provisions thereof, including the provisions for the granting of variances therefrom. In these circumstances, the granting of the requested variance from the ordinance provision involved herein is not necessary in order to do substantial justice as between this applicant and the public interest.

■ We think it is clear that any "hardship" imposed upon this applicant by this zoning ordinance is not an "unnecessary hardship" within the meaning of that term as used in the above-cited cases, and this applicant clearly failed to sustain the burden of proof imposed upon him under those cases.

This view makes it unnecessary for us to consider or pass upon the applicability, or the inapplicability, in cases involving a requested variance from a zoning regulation similar to the one involved herein, of the principle stated, discussed, and applied in the Appeal of John L. Pierce from Ruling of Board of Adjustment of City of Tulsa (1959), Okl., 347 P.2d 790, and Board of Adjustment of City of Oklahoma City et al. v. Puckett (1960), Okl., 353 P.2d 4, that "Generally, a hardship created by an owner of premises constitutes no valid basis for his application for a variance of, or exception to, zoning ordinances applicable to his premises."

■ This court has characterized the proceedings in district courts on appeal from boards of adjustment in zoning matters as being in the nature of equitable proceedings, and that the question on review to be determined is whether the judgment of the trial court is consonant with, or is against, the clear weight of the evidence. Twist et al. v. Kay (1967), Okl., 434 P.2d 180, 186. There is no conflicting, material evidence in this case to be weighed. The applicant for the variance involved herein simply failed to sustain the burden of proof imposed upon him.

Judgment reversed.

All the Justices concur.