Appeal of Harry D. MORELAND et al.

No. 43656.

Supreme Court of Oklahoma.

June 6, 1972.

Jones, Givens & Gotcher, by William B. Jones, Tulsa, for appellants.

Waldo F. Bales, City Atty., by Roy D. Johnsen, Asst. City Atty., for Board of Adjustment of City of Tulsa.

Sanders & McElroy, Bert C. McElroy, Tulsa, for appellee, intervenor, Bill Olson.

LAVENDER, Justice.

This case was commenced in the District Court of Tulsa County by the filing, by the appellants herein, of a notice of appeal from an order of the Board of Adjustment of the City of Tulsa.

A certificate attached to the notice stated that such a notice of appeal had also been filed with the clerk of that board and with the city clerk, as provided in the statute now appearing as 11 O.S.1971 § 408. We assume that, as required by that statute, the original, or certified copies, of all of the papers constituting the record in the case before that board, including the order in question, were transmitted to the court clerk and filed in the case.

The appeal to this court is from an order of the district court overruling the appellants' motion for summary judgment and sustaining a motion for summary judgment by an intervenor, Bill Olson, who was the applicant for the board's order in question. Based thereon, the court also rendered judgment for Olson affirming the board's order, denying and dismissing the appeal, and awarding costs.

A copy of the board's order is not included in the record on appeal to this court, as designated by the appellants. The order itself is not directly involved in this appeal.

The notice of appeal to the district court, and the intervenor's answer thereto, alleged that the board's order approved Olson's application and plans for a "community development project" for the development and use of a described 30-acre tract of land in the City of Tulsa as a mobile home addition with retail shopping center. The notice of appeal, and Olson's answer, alleged that the order was expressly made under authority of Ordinance No. 9844 of the City of Tulsa, later codified as Section 18 of Title 42 of the ordinances. Hereinafter, the ordinance is called the "CDP ordinance." An allegedly true copy of the ordinance is attached to, and made a part

of, the notice of appeal, and intervenor tacitly admits the correctness of the copy.

In the notice of appeal, the appellants alleged that the CDP ordinance is invalid for a number of reasons, thus depriving the order of any validity.

The appellants also alleged that the board's order does not comply with the requirements of the CDP ordinance. And, in an amendatory instrument, filed in the case six days after filing the notice of appeal to the district court, they sought injunctive relief against any action by the board based upon that order. However, those matters are not involved in this appeal, since the appellants confine their argument to attacks upon the validity of the CDP ordinance. In effect, they concede that, if the ordinance is valid, the order of the board is valid, and the trial court should be affirmed.

Omitting the procedural provisions contained in paragraphs (b), (c), (d) and (e) thereof, the CDP ordinance provides:

"Any person, corporation, partnership, association or combination thereof, owning or possessing a property right or interest in or to a tract of land not less than 10 acres in size may utilize said land as a community development project under the terms, conditions and provisions herein set forth.

"(a) Community Development Project Defined: A community development project for the purpose of this ordinance is a tract of land not less than 10 acres in size used primarily for residential purposes which may include thereon compatible accessory uses such as garages, storage spaces, convenience shopping, personal service and recreational facilities.

" * * *

"(d) Board of Adjustment—Procedure: * * * The Board of Adjustment, in addition to the powers hereby delegated to it, and with regard to a community development plan, shall:

"(1) Prescribe appropriate height, area, use and yard limitations of lands and structures in a community development project. The Board may modify applicable height, area, use and/or yard limitations of the zoning or use district in which said lands or structures are located; provided, however, that the gross area of the community development project, divided by the number of dwelling units within the project, shall equal not less than the square feet per dwelling unit required in the zoning or use district in which such project is located; provided further that if no residential density requirement exists in the zoning or use district in which said community development project is located, the residential density requirements of the U–2C district shall be applied.

"(2) Limit the use of a name plate for an establishment, activity or facility within a community development project to a gross surface area not greater than two (2) square feet or allow the name of a building to be placed thereon when such is an integral part of an outside wall of said building. The Board of Adjustment may further authorize the use of any sign, billboard or advertising materials otherwise permitted in the zone or use district in which said community development project is located.

"(3) Require adequate off-street parking facilities to serve the community development project.

"(4) Establish traffic, lighting, noise or other non-residential activity controls to insure that facilities and activities within the community development project will not adversely affect abutting residential properties.

"(e) * * *.

"(f) Standards: A community development project shall conform to and be consistent with the intent and purposes of the zoning ordinances of the City of Tulsa and the comprehensive plan for the development of the Tulsa Metropolitan Area and the City of Tulsa, Oklahoma."

Concerning procedure, paragraphs (b), (c), (d) and (e) of the CDP ordinance provide:

"(b) Submission of Plan to Board of Adjustment: Application for the approval of a community development plan shall be filed with the Board of Adjustment of the City of Tulsa, and upon payment of fees prescribed by said Board said application shall, within three (3) days thereafter, be transmitted to the Tulsa Metropolitan Area Planning Commission for review and recommendation."

"(c) Tulsa Metropolitan Area Planning—Procedure: Within thirty (30) days after said plan has been filed with the Board of Adjustment, and after notice and public hearing, the Tulsa Metropolitan Planning Commission shall make and report to the Board of Adjustment its findings and/or recommendations with regard to said plan."

"(d) Board of Adjustment—Procedure: The Board of Adjustment shall, after notice and public hearing, and at its next regular or special meeting, and after the requirements of said notice are satisfied, conduct a public hearing on the proposed community development project, and after consideration may approve, reject or take other action deemed appropriate with regard to said plan. * * *."

"(e) Zoning Clearance Permits and Building Permits: In the event the Board of Adjustment approves a community development project it shall authorize and direct the Building Inspector of the City of Tulsa to issue a zoning clearance permit in conformance with the approved community development project and to issue building permits thereafter upon proper application and payment of fees for the uses of land and buildings located within the community development project; * * *."

The appellants present their argument against the validity of the CDP ordinance under three propositions.

■ Their first proposition is that conferring upon the Board of Adjustment authority to approve plans for the development of an area within the city limits of Tulsa is not only not authorized by, but is contrary to, the Oklahoma zoning and planning statutes applicable to Tulsa County and the City of Tulsa at the times involved in this case.

The argument thereunder is that the approval or rejection of plans for the development of an area within the city limits is not included in the powers prescribed for city Boards of Adjustment by 11 O.S.1961 § 407. They argue that, under the "Metropolitan Area" planning and zoning statutes applicable to Tulsa County and the City of Tulsa (19 O.S.1961 §§ 863.7, 863.8 and 863.13), such approval is a designated function of the Metropolitan Area Planning Commission, subject to final approval by the city's legislative body in some instances (Sections 863.7 and 863.13), but not subject thereto in other instances (Section 863.8).

The appellants say that the creation of city Boards of Adjustment is provided for in 11 O.S.1961 § 407, which prescribes and limits the powers and authority of such a board. At the times involved herein, that statute provided:

"Such local legislative body may provide for the appointment of a Board of Adjustment, and in the regulations and restrictions adopted pursuant to the authority of this Act *may provide* that the said Board of Adjustment *may,* in appropriate cases and *subject to appropriate conditions and safeguards,* make special exceptions to the terms of the ordinance in harmony with its general purpose and intent and *in accordance with general or specific rules therein contained.*

"* * *.

"The Board of Adjustment *shall have* the following *powers*:

"(1) To hear and decide appeals where it is alleged there is error in any order, requirement, decision or determi-

nation made by an administrative official in the enforcement of this Act or of any ordinance adopted pursuant thereto.

"(2) To hear and decide [applications for] special exceptions to the terms of the ordinance *upon which such Board is required to pass under such ordinance.*

"(3) To authorize *upon appeal in specific cases* such variance from the terms of the ordinance as will not be contrary to the public interest, where owing to special conditions a literal enforcement of the provisions of the ordinance will result in unnecessary hardship, and so that the spirit of the ordinance shall be observed and substantial justice done.

" * * *." (Emphasis supplied)

Collectively, the three numbered paragraphs just quoted will be referred to hereinafter as the "powers" provisions of Section 407, but individually will be referred to by paragraph number.

The appellants anticipated the intervenor's argument that there is a distinction between "special exceptions" and "variances," and that the CDP ordinance provides "special exceptions" to the generally-applicable provisions of the zoning ordinance. The appellants argue that, construed in that manner, the ordinance is invalid in that it contemplates the approval by the Board of Adjustment of plans for community development projects without the applicants therefor being required to show the existence of the four conditions set forth in paragraph (3) of Section 407. They say that this court has repeatedly held that the granting of either a special exception or a variance under Section 407 requires a showing by the applicant of the existence of the four conditions set forth in paragraph (3) of Section 407. In support of that statement, they cite: Application of Shadid (1951), 205 Okl. 462, 238 P.2d 794; Twist et al. v. Kay (1967), Okl., 434 P.2d 180; and Board of Adjustment of Oklahoma City et al. v. Shanbour (1967), Okl., 435 P.2d 569.

With a slight variation therefrom in the Shanbour case (making the rule applicable to district courts of appeal as well as to Boards of Adjustment), the rule relied upon by the appellants is stated in the syllabus to each of the three cited cases as follows:

"Before the board of adjustment has authority to make an exception to, or allow a variance from, the zoning ordinance of Oklahoma City, the person claiming the exception or variance has the burden of showing (a) that the granting of the permit will not be contrary to the public interest, (b) that the *literal enforcement of the ordinance* will result in unnecessary hardship, (c) that by granting the permit *contrary to the provisions of. the ordinance,* the spirit of the ordinance will be observed, and (d) that by granting the permit, substantial justice will be done." (Emphasis supplied)

The same rule, or substantially the same rule, including the reference to an "exception," is stated or implied in the following cases: Anderson-Kerr, Inc. v. Van Meter et al. (1933), 162 Okl. 176, 19 P.2d 1066; Van Meter et al. v. H. F. Wilcox Oil & Gas Company et al. (1935), 170 Okl. 604, 41 P.2d 904; American Oil & Refining Company v. Beveridge et al. (1936), 177 Okl. 203, 58 P.2d 337; Beveridge et al. v. Fairfax Oil Corporation (1936), 177 Okl. 579, 61 P.2d 248; Oklahoma City et al. v. Harris et al. (1941), 191 Okl. 125, 126 P.2d 988; Thompson v. Phillips Petroleum Company (1944), 194 Okl. 77, 147 P.2d 451; Board of Adjustment of City of Tulsa v. Shore (1952), 207 Okl. 381, 249 P.2d 1011; Appeal of Pierce (1959), Okl., 347 P.2d 790; Board of Adjustment of Oklahoma City et al. v. Puckett (1960), Okl., 353 P.2d 4; Brown v. Fraser (1970), Okl., 467 P.2d 464.

Each of the cited cases (including the Shadid, Twist, and Shanbour cases) arose out of an appeal to a city's Board of Adjustment from the denial of an application for a permit to construct or alter a building or other facilities, or to drill an oil and gas well, on property contrary to the appli-

cable inhibitions imposed by the city's zoning ordinance. Insofar as disclosed by the opinions, the only provision for any departure from such inhibitions was contained in provisions similar to the "powers" provisions of Section 407.

Thus, in each instance, what the applicant proposed to do would violate the letter (if not the spirit) of the zoning ordinance, even if the requested departure and permit were granted. In the latter event, the violation would be what one of the cited cases called an "excused violation." That is the exact result clearly contemplated by paragraph (3) of Section 407. Even the evidentiary rule stated or implied in the above-cited cases contemplates that result in the basic appeal situation mentioned in that paragraph of Section 407.

■ As we construe Section 407, the "power" conferred upon Boards of Adjustment in paragraph (3) thereof, to authorize "variances from the terms of the ordinance," exists in all such boards created under authority of that statute even without any mention thereof in a city's zoning ordinance. The "power" conferred upon such boards in paragraph (2) thereof, to hear and decide "special exceptions to the terms of the ordinance upon which such Board is required to pass under such ordinance," exists only with respect to "special exceptions" to the generally-applicable provisions of a zoning ordinance, actually provided therein with some provision in the ordinance for applications for such special exceptions to be passed upon by the Board of Adjustment. The conditions under which such special exceptions may be granted are to be provided in the ordinance. The conditions under which variances may be granted are prescribed in paragraph (3) of Section 407. When a zoning ordinance provides special exceptions to the generally applicable provisions thereof and authorizes the Board of Adjustment to pass upon applications therefor, action under such an exception, granted by the board in accordance with the general and/or specific rules therefor contained in the ordinance, is in compliance with the *letter* of the ordinance, not in (the "excused") violation thereof as in the case of a variance granted by the board under paragraph (3) of Section 407.

■ A "special exception" provided under authority of Section 407 is not the same thing as a "variance" provided for in paragraph (3) of that statute. The conditions set forth in paragraph (3) for the allowance of a "variance" have no application to "special exceptions" mentioned in the initial paragraph, and paragraph (2), of that statute.

The matter of "special exceptions to the terms of the ordinance," mentioned in Section 407, was not involved in any manner in any of the above-cited cases. Consequently, they do not support the argument for which they are cited by the appellants in the present case.

Insofar as the above-cited, or any other, opinions of this court express, or appear to express, the view that "special exceptions" are in a legal sense the same as "variances," such view is hereby disapproved.

The Tulsa CDP ordinance is clearly intended to supplement Tulsa's zoning ordinances as an integral part thereof. As we understand the CDP ordinance, it provides for certain departures from the generally-applicable use, height, area, yard and residential density provisions of the zoning ordinances.

Basically, the ordinance contemplates that a portion or portions of the tract involved in a plan for a community development project as approved by the Board of Adjustment may, but need not, be used for non-residential purposes such as convenience shopping, personal service, and recreational facilities, but that the use of enough of the tract will be restricted to residential purposes that the tract, as a whole, will be used primarily for residential purposes.

The ordinance does not authorize the Board of Adjustment to prepare and approve a plan for a community development project on its own initiative. Under the

ordinance, the board acts only at the request, and with the consent, of the owner or owners of the tract involved in such a plan. The ordinance does not authorize the board to approve a proposed plan under which any portion of the tract involved would be used for any purpose not permitted in the zoning classification in which the tract is located. It does not authorize the board to re-zone any property.

Obviously, the CDP ordinance can be applied only to tracts which are, at the time, located in use-districts low enough on the zoning scale that, under the generally applicable provisions of the zoning ordinances, the tract could be used for any one or more of the purposes provided for in the community development project plan.

As a practical matter, submission of such a plan to the Board of Adjustment will have been preceded by action of the city's legislative body, re-zoning the tract to a lower classification in which all of the proposed uses of the tract are permitted, subject to approval by the Board of Adjustment of a plan for the development of the tract as a community development project. Apparently, that occurred in the present case.

Under the CDP ordinance, as we understand it, the owner of the involved tract agrees, in the project plan as approved by the Board of Adjustment, that enough of the tract be restricted to residential uses that the tract, as a whole, will be used primarily for residential purposes and only secondarily for permitted non-residential uses.

In connection with such agreed departures from the applicable use provisions of the zoning ordinances, the CDP ordinance also provides for appropriate departures from the applicable height, area, yard, and residential density provisions of the zoning ordinances.

As indicated above, some rules concerning departures from the generally-applicable use provisions of the zoning ordinances are built into the CDP ordinance. In paragraph (f) thereof, the ordinance pro-

vides a general rule concerning any and all departures from the generally-applicable provisions of the zoning ordinances. In subparagraph (1) of paragraph (d), it provides some specific rules concerning departures from the generally-applicable height, area, yard, and residential density provisions of the zoning ordinances.

If a proposed plan for a community development project complies with the provisions of the CDP ordinance, and the plan is approved by the Board of Adjustment as provided in that ordinance, development of the involved tract in accordance with the approved plan will be in conformity with the letter of the zoning ordinances and will not constitute an excused violation thereof.

Thus, it appears that the Tulsa CDP ordinance involved herein provides "special exceptions" to the generally-applicable provisions of the city's zoning ordinances, subject to certain conditions and safeguards, as authorized in the initial paragraph of 11 O.S.1961 § 407. It also provides that applications for such "special exceptions" be passed upon by the city's Board of Adjustment, as contemplated in that paragraph and in paragraph (2) of that statute.

The ordinance does not authorize the Board of Adjustment to revise, in fact or in effect, the comprehensive or master plan for the development of the metropolitan area and/or the city, or any of the city's zoning regulations, the adoption and revision of which, by the Planning Commission and the city's legislative body, are provided for in 19 O.S.1961 §§ 863.7 and 863.13, cited by the appellants. And, compliance with the procedural provisions of paragraphs (c) and (d) of the ordinance would seem to comply with any applicable provisions of 19 O.S.1961 § 863.8, cited by the appellants.

The appellants' first proposition cannot be sustained.

The appellants' second proposition is that the final approval, or "adoption," of a plan for the development of a city, or a portion thereof, is a legislative function and cannot

validly be delegated by the city's legislative body to an administrative body such as the Board of Adjustment.

Their third proposition is that, if the final approval of a plan for a community development project provided for in the CDP ordinance is not a legislative function, the ordinance is unconstitutional in that it attempts to confer upon an administrative body power to approve or reject such plans in language so vague and uncertain that it does not establish uniform standards for the exercise of that power.

We consider the two propositions as being related, and will consider them together.

The appellants cite, in general, the statutes relating to zoning regulations (11 O.S.1961 §§ 401–410) and metropolitan area planning (19 O.S.1961 §§ 863.1–863.43), and Beveridge et al. v. Harper & Turner Oil Trust et al. (1934), 168 Okl. 609, 35 P.2d 435, 442, and O'Rourke et al. v. City of Tulsa et al. (1969), Okl., 457 P.2d 782, 785.

■ Neither of the cited cases holds any more than that the enactment and amendment of zoning regulations, or the refusal to do so (involved in the O'Rourke case), whether an entire city or only a particular tract would be affected thereby, is a legislative function specifically granted to the legislative body of a city or town by the statute now appearing as 11 O.S.1971 § 401. Neither case involved an application for a special exception to a zoning ordinance provided in the ordinance. Neither case supports the appellants' contention that passing upon such applications is a legislative function.

We held hereinabove that the Tulsa CDP ordinance is not in conflict with the provisions of 19 O.S.1961 §§ 863.7 or 863.-13, which require final approval, or "adoption," by the legislative body of the city involved, of a master plan or amendments thereto, or of zoning regulations or amendments thereto.

The basic function of the Board of Adjustment under the CDP ordinance is to determine whether or not a plan for a community development project, as submitted to it by the owners of the tract involved, complies with the provisions of that ordinance [including the general requirement set forth in paragraph (f) of the ordinance]. Basically, that is not a legislative function, but is quasi-judicial. See: Oklahoma City et al. v. Harris et al., supra.

In the case of In re Dawson et al. (1928), 136 Okl. 113, 277 P. 226, it was contended that the "powers" provisions of Section 407 were void because they delegated legislative power to an administrative body. Quoting with approval from a Tennessee case involving a similar attack on similar provisions of a city ordinance, this court said (page 228 of the Pacific report):

"'* * * Provisions of such an ordinance authorizing an administrative board to permit departures from the requirements of the ordinance have been held to constitute an unconstitutional delegation of legislative power, when no sufficient measure or guide for the action of the administrative board is fixed in the ordinance. In the present case the administrative board is required to follow the "fundamental purpose and intent" of the ordinance in every instance, and the board is not given such discretion as will amount to a delegation of the legislative power of the city government. * * *.'"

Erroneously referring to the statute as the "ordinance," this court said:

"The zoning ordinance does not unlawfully delegate legislative power to an administrative board by permitting such board to allow departures from the requirements of the ordinance, *because such board is required to follow the fundamental purpose and intention of the ordinance in every instance*." (Emphasis supplied)

The Tulsa CDP ordinance prescribes some specific standards concerning "residential density" and "area" limitations. In paragraph (f) thereof, it prescribes a

standard to be followed by the Board of Adjustment *in every instance*: "A community development project shall conform to and be consistent with the intent and purposes of the zoning ordinances of the City of Tulsa and the comprehensive plan for the development of the Tulsa Metropolitan Area and the City of Tulsa, Oklahoma."

The purposes of a comprehensive or master plan for the Tulsa Metropolitan Area and the City of Tulsa are set forth in the statute now appearing as 19 O.S.1971 § 863.7. The purposes for which the legislative body of the City of Tulsa was, and is, empowered to enact zoning regulations are set forth in the statutes now appearing as 11 O.S.1971 § 407 and 19 O.S.1971 § 863.13.

Concerning particular matters of authority, the appellants argue that the ordinance does not establish sufficient standards for the board to follow in modifying the applicable limitations so as to provide "appropriate" height, area, use and yard limitations, as authorized in sub-paragraph (1) of paragraph (d), or in establishing traffic, lighting, noise or other non-residential activity to insure that facilities and activities within the community development project will not "adversely" affect abutting residential properties, as authorized in paragraph (4).

Sub-paragraph (1) of paragraph (d) contains some specific standards concerning modifications of "residential density" and "area" limitations. As we have construed it under the first proposition, the ordinance contains some standards concerning modifications of "use" limitations.

Especially in view of the almost limitless number of combinations of situations which could be presented in plans for community development projects under the ordinance, and the general standard prescribed in paragraph (f) to be followed in every instance, we hold that the grant of authority by the ordinance to the Board of Adjustment is not a delegation of legislative power to the board.

The appellants also argue that the CDP ordinance is void for want of certainty as to the meaning of the terms "used primarily for residential purposes," and "compatible accessory uses," used in paragraph (a) in defining a community development project. The term "compatible accessory uses" is followed by the words "such as garages, storage spaces, convenience shopping, personal service and recreational facilities." The terms "residential" and "non-residential" are used in the ordinance, and indicate the sense in which both terms are used—as opposites. With that, and the obvious basic purpose of the ordinance in mind, we encountered no difficulty in determining the meaning of the term "used primarily for residential purposes," as used in paragraph (a).

Neither the second nor third proposition argued by the appellants can be sustained.

Judgment affirmed.

BERRY, C. J., and WILLIAMS, JACKSON, IRWIN, McINERNEY and BARNES, JJ., concur.