**Application of VOLUNTEERS OF AMERICA, INC. and Curtis M. French.**

**No. 60174.**

Supreme Court of Oklahoma.

Feb. 2, 1988.

Joseph A. McCormick, Sublett, McCormick, Andrew & Keefer, Tulsa, for appellant.

Neal E. McNeill, City Atty., Alan L. Jackers, Asst. City Atty., City of Tulsa, for appellee.

**PER CURIAM:**

Volunteers of America, Inc., and Curtis M. French (Volunteers) applied to the Board of Adjustment in Tulsa, Oklahoma, for a special exception[1] to a zoning ordinance.[2] They wanted to set up a prison pre-release center in an existing building in a district zoned "Commercial High Intensity" (CH). Prison inmates would be rehabilitated at the Center during the last few months of their prison term, so they would

---

1. Although the terms "special exception" and "variance" were used interchangeably in Oklahoma Cases prior to 1972, the Oklahoma Supreme Court recognized a distinction between the two in *Appeal of Moreland,* Okl., 497 P.2d 1287 (1972). "A 'special exception' ... is not the same thing as a 'variance'.... The conditions ... for the allowance of a 'variance' have no application to 'special exceptions'...." The Court further held that any previous view that expressed special exceptions were in a legal sense the same as variances is hereby disapproved. *Moreland,* supra, at 1292. No Oklahoma cases concerning zoning ordinances since *Moreland* involved special exceptions.

The special exception use is a valid zoning mechanism that delegates to an administrative board a limited authority to allow enumerated uses, which the legislature has determined to be permissible, absent any fact or circumstance negating the presumption. *Schultz v. Fritts,* 291 Md. 1, 432 A.2d 1319 (1981).

2. Title 42, Tulsa Zoning Code § 1202.2 provides that a permitted use in all use districts is, inter alia, "Convict Pre-release Center."

be better equipped to re-enter Tulsa society after their release. Volunteers, a charitable organization similar to the Salvation Army, has pre-release centers in several cities across the United States.

After the Tulsa Board of Adjustment (Board) denied Volunteers' application because of opposition from area residents, Volunteers appealed to the Tulsa County District Court. In a trial de novo, the District Court found that the proposed center appeared satisfactory to meet an existing need in Tulsa. However, because "fear which may or may not have a basis in fact" would "probably" adversely affect future development in the area, the court denied the application.

## I.

### DOES AN APPLICANT FOR A SPECIAL EXCEPTION HAVE THE BURDEN OF PROOF?

The city of Tulsa (City) alleges that a presumption of validity attaches to the Board's decisions. We agree. In cases involving special exceptions as well as variances, a presumption of correctness exists in favor of the Board's rulings. See, e.g., *Vinson v. Medley*, Okl., 737 P.2d 932 (1987); *Bailey v. Uhls*, Okl., 503 P.2d 877 (1972). The Board's decision will be accorded great weight and will not be disturbed on appeal after it has been affirmed by a district court, unless it is clearly arbitrary or erroneous. *Vinson*, supra.

Volunteers contend that this Court's distinction between an exception and variance in *Appeal of Moreland*, Okl., 497 P.2d at 1292, shifted the burden of proof from an applicant to the protestants of an exception. They argue that the Board, and the District Court, erred in placing the same burden on Volunteers as it would place on an applicant for a variance.

Even though an exception and a variance are different, they are within the same species of zoning mechanism; both are re-

quests for relief from zoning ordinances. The difference is that a variance is an "excused violation," and an exception is a conditionally permitted use. Not only did *Moreland* establish this distinction, it also differentiated the conditions under which each is to be granted. A variance may be granted only pursuant to the terms of 11 O.S. 1981, § 44–107,[3] an exception will be granted in accordance with conditions set forth in the ordinance itself. 497 P.2d, at 1292. Prior to this holding, both an exception and variance were subject to the variance statutory requirements. *Moreland* did *not*, however, shift the burden of proof with this delineation.

It is well established in Oklahoma that the applicant for a special exception has the burden of proving the conditions have been met. *Brown v. Fraser*, Okl., 467 P.2d 464, 467 (1970); *Twist v. Kay*, Okl., 434 P.2d 180, 184 (1967); *Application of Shadid*, 205 Okl. 462, 238 P.2d 794, 797 (1951); *Thompson v. Phillips Petroleum Co.*, 194 Okl. 77, 147 P.2d 451, 452 (1944). Tulsa, Ok., Rev. Ordinances, Tit. 42, ch. 16, sec. 1680.3 prescribes the requirements for a special exception to be granted:

"... the special exception will be in harmony with the spirit and intent of the code, and will not be injurious to the neighborhood or otherwise detrimental to the public welfare."

The district court correctly placed the burden of proving these conditions on Volunteers.

## II.

### DOES THE TERM "NEIGHBORHOOD" AS USED IN THE ZONING ORDINANCE ENCOMPASS AN AREA INCLUDING TWO DIFFERENTLY ZONED DISTRICTS, WITH AN INTERSTATE HIGHWAY DIVIDING THEM?

The term "neighborhood," as defined by Black's Law Dictionary, 5th Ed., is

---

**3.** 11 O.S. 1981, § 44–107:

A variance from the terms of the ordinance may be granted, as provided in this article, only upon a finding by the board of adjustment that:

1. The application of the ordinance to the particular piece of property would create an unnecessary hardship;

2. Such conditions are peculiar to the particular piece of property involved; and

3. Relief, if granted, would not cause substantial detriment to the public good, or impair the purposes and intent of the ordinance or the comprehensive plan.

a "a place near; an adjoining or surrounding district; a more immediate vicinity." This signifies nearness as opposed to remoteness, connoting a "congeries of local interests arising from a problem confined to a limited area." *Cloverleaf Kennel Club v. Bd. of County Com'rs.*, 136 Colo. 441, 319 P.2d 487, 489 (1957). Hence, the boundaries of a given neighborhood are not determined solely by linear footage. Rather, many factors must be considered, such as geography, terrain, and barriers, both God-made and man-made. See, *Hicks v. Capra*, 160 Colo. 248, 416 P.2d 362 (1966).

In the present case, the proposed site is immediately north of downtown Tulsa, within the inner dispersal loop, between the Burlington Northern right-of-way and I–244 on the north and west. It is surrounded on three sides by commercial high intensity zoning and on one side by the interstate. The district court, however, based its decision on the possible effects of the Center on an area north of the expressway, zoned primarily Residential. This area north of I–244 does not fall within the definition of "neighborhood." Limited to the situation in this case, the expressway serves as a man-made barrier or buffer zone between the site and the residential area north of the expressway. Therefore, the only "neighborhood" to be considered is the CH-zoned area south of I–244, in the immediate vicinity of the proposed site.

### III.

**MAY DENIAL OF A SPECIAL EXCEPTION BE BASED UPON BAD PERCEPTIONS OF THE PROPOSED USE AND POTENTIAL ADVERSE EFFECTS ON ADJACENT PROPERTY?**

■ Volunteers further contend the district court's decision was erroneously based on speculation rather than actual facts. The record indicates the City's witnesses expressed concerns about the effects of a pre-release center on the crime problem within a couple of blocks of the Center. However, no factual evidence was presented to support these fears. Additionally, several witnesses specifically stated their objections were based on perceptions of a pre-release center.

The Colorado Supreme Court was faced with a similar situation in *Adams County Ass'n v. City of Westminster*, 196 Colo. 79, 580 P.2d 1246 (1978). An attitude of general hostility existed in the neighborhood toward a state-licensed group home for the mentally retarded that attempted to obtain a special use permit. This attitude was reflected in testimony of persons whose primary concerns stemmed from fears and stereotyping of the mentally handicapped. However, the court held that these *potential* adverse effects were impermissible factors upon which to deny the permit.

Likewise, we hold that the district court erred in denying Volunteers' special exception request based on fears "which may or may not have a basis in fact." Rather, actual evidence must be presented to show that the Center will be "injurious to the neighborhood or otherwise detrimental to the public welfare."

### IV.

### CONCLUSION

■ A special exception will be found to be arbitrarily denied when the evidence establishes by the basic physical facts that the requested use is compatible with the basic use authorized within the particular zone, and does not endanger the public health, safety or general welfare of the area affected. *Oklahoma City v. Barclay*, Okl., 359 P.2d 237, 241, 242 (1961); *Minnetonka Congregation of Jehovah's Witnesses v. Svee*, 303 Minn. 79, 226 N.W.2d 306, 309 (1975).

These proceedings before this Court are characterized as equitable in nature, and the question to be determined is whether the judgment of the trial court is consonant with or against the clear weight of the evidence. *Twist v. Kay*, Okl., 434 P.2d 180, 186 (1967). The basic facts found by the trial court as a foundation for his judgment are clearly contrary to the weight of the evidence. The district court erroneously defined "neighborhood" and based its deci-

sion for the most part on speculation rather than actual evidence.

Therefore, the case is remanded to the district court for further proceedings to determine, under proper criteria, whether a special exception for a pre-release center should be granted.

REVERSED AND REMANDED.

HARGRAVE, V.C.J., and SIMMS, OPALA, ALMA WILSON, KAUGER and SUMMERS, JJ., concur.

LAVENDER, J., concurs in result.

HODGES, Justice, concurring in part, dissenting in part:

I would reverse with directions to grant the requested use exception.