In the Matter of the Application of FREE-DOM RANCH, INC., an Oklahoma non-profit organization.

FREEDOM RANCH, INC., Appellant,

v.

BOARD OF ADJUSTMENT OF the CITY OF TULSA, Appellee,

and

Twenty First Properties, Inc., Intervenor, Appellee,

Charlene Chancellor, Radio, Inc., Balcor Property Management, Inc., Downtown Tulsa, Unlimited, Inc., and Genevieve Rogers, Intervenors and Appellees.

No. 79170.

Court of Appeals of Oklahoma, Division No. 3.

Feb. 1, 1994.

Rehearing Denied May 10, 1994.

Certiorari Denied July 13, 1994.

As Modified July 18, 1994.

John W. Moody, William J. Doyle III & Associates, Tulsa, for appellant.

Alan Jackere, Asst. City Atty., Tulsa, for appellee, City of Tulsa.

Roy D. Johnsen, Epperson & Johnsen, Tulsa, for appellee, Twenty First Properties, Inc.

Brian R. Huddleston, Brune, Pezold, Richey & Lewis, Tulsa, for intervenors, Charlene Chancellor, Radio, Inc., Balcor Property Management, Inc., Downtown Tulsa, Unlimited, Inc., and Genevieve Rogers.

## OPINION

BAILEY, Judge:

Freedom Ranch, Inc. (FRI) seeks review of the Trial Court's judgment, after hearing de novo, affirming the denial of FRI's request for a special zoning exception by the Board of Adjustment of the City of Tulsa (City). In this appeal, FRI challenges the constitutionality and validity of City's zoning scheme and application thereof to FRI's property.

FRI operates a facility[1] under contract with the Oklahoma Department of Corrections housing convicts nearing the end of their sentences. FRI provides undeniably positive benefits such as counseling, and the inmates have an unusual degree of freedom of movement both within and without the facility. The facility is located in an area of downtown Tulsa which is zoned Central Business District and permits "intense use" of the property for commercial, multi-family or office use. Although the area immediately surrounding FRI's facility is admittedly somewhat run down, the area is classified as Development Opportunity Site No. 3 under City's Comprehensive Plan for development and, as such, is designated for redevelopment consistent with the plan to revitalize the Tulsa Central Business District.

City's zoning code specifically lists "convict pre-release center" as a Use Unit 2 permitted to operate in the Central Business District only if granted a special exception by the Board of Adjustment. On the other hand, "residential treatment centers" and "transitional living centers" are classified Use Unit 5 permitted within the Central Business District without necessity of a special exception. In 1987, City evidently issued FRI a zoning clearance permit to operate the facility as a Use Unit 5 "transitional living center."

In 1991, however, and apparently after inspection by a City Code Enforcement Officer, City notified FRI that FRI must apply for a special exception to operate as a Use Unit 2 "convict pre-release center." After hearing, City's Board of Adjustment upheld the decision of the Code Enforcement Officer, determining that FRI's facility fell under the definition of a Use Unit 2 convict pre-release center and denying FRI's application for special exception. FRI appealed to the Trial Court which also denied FRI's application for special exception. FRI appeals.

■ FRI first challenges the constitutionality of City's zoning code as denying the equal protection guarantees of both the Oklahoma and United States Constitutions. In support of this proposition, FRI alleges City's unsubstantiated negative attitudes toward and/or fear of FRI's operation of its facility, serving as a basis for according different zoning treatment to essentially the same types of proposed use, denies FRI equal protection.[2]

---

1. FRI first leased, then purchased, the facility from Intervenor Twenty First Properties, Inc.

2. See, *City of Cleburne v. Cleburne Living Center,* 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) (zoning ordinance requiring special use permit for group home for mentally retarded while not requiring same for other "group" facilities violates equal protection clause); *Bannum, Inc. v. City of Louisville, KY,* 958 F.2d 1354 (6th Cir.1992) (requirement that "community training center" receive special use permit because of City's fear, without supporting data, that persons

■ We indulge a presumption of validity of municipal zoning ordinances and regulations.[3] That is, so long as such ordinances and regulations create classifications based not upon a suspect class nor involving a fundamental right, such classifications need only rationally relate to a legitimate purpose in order to withstand constitutional challenge.[4] In the present case, we deal with neither a suspect class (convict pre-release centers) nor a fundamental right (to operate a convict pre-release center without regard to zoning ordinances). Thus, if there exists a legitimate purpose for requiring convict pre-release centers to obtain a special zoning exception, such treatment is constitutional.

The record herein reveals City adduced evidence of the orderly development of its Central Business District in accordance with the provisions of its Comprehensive Plan which includes the area in which FRI's facility is located. We hold the orderly development of the Tulsa Central Business District constitutes a legitimate City interest, and find City's denial of FRI's application for zoning exception rationally related to that interest.[5,6] Under these specific facts and circumstances, we find no constitutional infirmity in City's zoning classifications and the application thereof to FRI.

■ FRI also complains City's zoning ordinance is unconstitutionally vague,[7] noting City's zoning code does not define a "convict pre-release center," and arguing inability to ascertain from the zoning code whether FRI is operating such a center as opposed to a residential treatment center, transitional living center or detention/correctional facility. However, the record reflects FRI operates its facility under contract with the Department of Corrections pursuant to which FRI houses persons convicted of a crime ("convicts") who have not been paroled ("pre-release") in a group setting ("center"); that is, a "convict pre-release center" in City zoning ordinance parlance. Moreover, City's zoning code defines detention/correctional facility, which requires a special zoning exception, as a "facility for the detention, confinement, treatment and/or rehabilitation of persons arrested or convicted ... [including] pre-release center[s]." We therefore find City's zoning ordinance not unconstitutionally vague.

■ Finally, FRI complains the Trial Court erred in finding that permitting FRI's request for a special zoning exception would be contrary to the public interest, arguing compatibility of FRI's use of the property with the basic use authorized within the area zoned, and that actual evidence of detriment, not subjective fears, must be presented in opposition to the exception.[8] However, FRI bears the burden of proving the requisite conditions for a special exception have been met, i.e., that the exception be "in harmony with the spirit and intent of the code, and will not be injurious to the neighborhood or otherwise detrimental to the public welfare." [9] City's zoning standards further provide that the code was enacted for the purposes of,

living therein are more likely to commit a crime held invalid).

3. *Euclid v. Ambler Realty Co.*, 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926).

4. *Jacobs, Visconi & Jacobs v. City of Lawrence*, 927 F.2d 1111 (10th Cir.1991) (purpose of retaining vitality of downtown retail area sufficient to deny application to rezone residential land to develop suburban shopping mall); *Mahoney v. City of Chicago*, 9 Ill.2d 156, 137 N.E.2d 37 (1956) (zoning ordinance restricting funeral homes to business district while allowing other businesses permissible in areas zoned for apartments held reasonable and within legislative discretion).

5. See *Jacobs, Visconi & Jacobs*, 927 F.2d at 1119.

6. We also note City adduced evidence, albeit controverted, that FRI posed a legitimate crime threat to the area, and that property values in the vicinity had fallen as a result of FRI's presence.

7. Citing, inter alia, *City of Independence v. Richards*, 666 S.W.2d 1, 7 (Mo.App.) (zoning ordinances must operate uniformly and avoid arbitrary enforcement).

8. Citing *Application of Volunteers of America*, 749 P.2d 549 (Okl.1988) (reversing denial of zoning variance on grounds the lower court considered too large a "neighborhood", and that such a denial may not be based on potential adverse effects on the neighborhood).

9. Tulsa, Ok.Rev.Ord. tit. 42 ch. 16 § 1608.3; *Application of Volunteers of America*, 749 P.2d at 551 (citation omitted).

*inter alia,* "promoting the development of the community in accordance with a comprehensive plan."[10]

In the present case, the record reveals location of FRI's facility within Opportunity Site 3 of City's Comprehensive Plan, a site within the Central Business District possessing great redevelopment potential and expectations of extensive redevelopment of the area for office and residential use. Further, City adduced evidence that numerous "clients" of FRI had been involved in "serious incidents" requiring reports to the Department of Corrections. Finally, City proffered evidence that the value of the surrounding property had, in fact, been adversely affected by the FRI facility. We therefore find evidence in the record demonstrating that the approval of FRI's application for special exception would not promote "the development of the community in accordance with a comprehensive plan"[11] nor be "in harmony with the spirit and intent" of City's zoning code.[12]

■ These proceedings are equitable in nature and, as such, the judgment of the Trial Court will not be disturbed unless against the clear weight of the evidence.[13] We hold the basic facts found by the Trial Court as a foundation for its judgment not against the clear weight of the evidence and, accordingly, find no error in the judgment denying FRI's application for a special exception to City's zoning code.

The order of the Trial Court is therefore AFFIRMED.

GARRETT, V.C.J., and HUNTER, P.J., concur.

---

10. Tulsa, Ok.Rev.Ord. tit. 42 ch. 16 § 101.A.

11. Tulsa, Ok.Rev.Ord. tit. 42 ch. 16 § 101.A.

12. City, Ok.Rev.Ord. tit. 42 ch. 16 § 1608.3; *Application of Volunteers of America,* 749 P.2d at 551 (citation omitted).

13. *Application of Volunteers of America,* 749 P.2d at 552 (citation omitted).