## No. 27697

**Adams County Association for Retarded Citizens, Inc., Ralph Veatch, Individually and as Parent, Natural Guardian, and Next Friend of Victor Veatch, Francis Veatch, Individually and as Parent, Natural Guardian, and Next Friend of Victor Veatch, Victor Veatch, Cecilia Wilkinson, Individually and as Parent, Natural Guardian, and Next Friend of David Wilkinson, and David Wilkinson v. The City of Westminster, a Colorado Municipal Corporation, The City Council of the City of Westminster, Vi June, Frank Blazek, Fred Allen, Kenneth E. Harris, Jr., George Hovorka, Chester McPherson, and Rodney Sheffer, as Members of the City Council of the City of Westminster, Everett Northup, as Chief Building Inspector for the City of Westminster, Steve Garman, as the City Manager of the City of Westminster v. The People of the State of Colorado**

(580 P.2d 1246)

Decided July 10, 1978.

Epstein and Gilbert, P.C., Joseph M. Epstein, for plaintiffs-appellees and cross-appellants.

Stitt, Wittenbrink and Roan, P.C., James R. Stitt, Randall J. Davis, for defendants-appellants and cross-appellees.

J. D. MacFarlane, Attorney General, David W. Robbins, Deputy, Edward G. Donovan, Solicitor General, James L. Kurtz-Phelan, Assistant, for intervenors-appellees and cross-appellants.

Susan K. Griffiths, General Counsel, Dee P. Wisor, Staff Attorney, for amicus curiae Colorado Municipal League.

Robin S. Freedman, for amicus curiae Colorado Bar Association.

*En Banc.*

MR. CHIEF JUSTICE PRINGLE delivered the opinion of the Court.

The Adams County Association for Retarded Citizens filed a complaint against the City of Westminster alleging that the City had illegally refused to issue a special use permit for the establishment of a state licensed group home for the mentally retarded. After a hearing, the trial court directed the City to issue the special use permit. The case is now before us on direct appeal because the constitutionality of a state statute was placed at issue. We reverse the trial court's order.

In 1975, the Colorado Legislature enacted Senate Bill 135 commonly known as the "Bill of Rights for the Developmentally Disabled" which, in pertinent part, was codified into sections 27-10.5-101, *et seq.,* C.R.S. 1973 (1976 Supp.) and 31-23-301, *et seq.,* C.R.S. 1973 (1977 Repl. Vol.). This act creates a statutory right to treatment in the least restrictive environment and requires that each facility in which developmentally disabled people reside "implement a program so that each resident may live as *normally as possible."* (Emphasis added.). Sections 27-10.5-101 and 112, C.R.S. 1973 (1976 Supp.). The general assembly also declared that one of the purposes of the act was "to ensure the fullest measure of privacy, dignity, rights, and privileges to persons who are developmentally disabled." Section 27-10.5-101(1)(c), C.R.S. 1973 (1976 Supp.).

Pursuant to these goals and purposes, the general assembly provided for state licensed group homes as one mechanism for the furnishing of care and treatment in the least restrictive setting possible. Section 27-10.5-133, C.R.S. 1973 (1976 Supp.).

Testimony at the trial court hearing established that the function of these group homes for the developmentally disabled is "to provide a residence in the community and a training base to develop the skills of the individual to a maximum potential that will allow them to function in the community." Expert witnesses testified that a group home was an excellent setting for learning domestic and community skills such as food preparation, money management, use of public transportation, shopping, and personal grooming. In other words, the purpose of these group homes is to enable developmentally disabled persons to live as normally as possible.

The following sections, enacted as a part of Senate Bill 135, are directly at issue here.

Section 31-23-301(4), C.R.S. 1973 (1977 Repl. Vol.):

"No statutory or home rule city or town or city and county shall enact an ordinance prohibiting the use of a state-licensed group home for the developmentally disabled which serves not more than eight developmentally disabled persons and appropriate staff, as a residential use of property for zoning purposes. As used in this subsection (4), the phrase 'residential use of property for zoning purposes' includes all forms of residential zoning and specifically, although not exclusively, single-family residential zoning."

Section 31-23-303(2), C.R.S. 1973 (1977 Repl. Vol.):

"(a)  The general assembly declares that the establishment of state-licensed group homes for the exclusive use of developmentally disabled persons is a matter of statewide concern and that a state-licensed group home for eight developmentally disabled persons is a residential use of property for zoning purposes. As used in this subsection (2), the phrase 'residential use of property for zoning purposes' includes all forms of residential zoning and specifically, although not exclusively, single-family residential zoning. 'Developmentally disabled' in this section means those persons having cerebral palsy, multiple sclerosis, mental retardation, autism, and epilepsy. . . . (c)  Nothing in this subsection (2) shall be construed to supersede the authority of municipalities and counties to regulate such homes appropriately through local zoning ordinances or resolutions, except insofar as such regulation would be tantamount to prohibition of such homes from any residential district. This section is specifically not to be construed to permit violation of the provisions of any zoning ordinance or resolution with respect to height, setbacks, area, lot coverage or external signage or to permit architectural designs substantially inconsistent with the character of the surrounding neighborhood. This section is also not to be construed to permit conducting of the ministerial activities of any private or public organization or agency or to permit types of treatment activities or the rendering of services in a manner substantially inconsistent with the activities otherwise permitted in the particular zoning district. If reasonably related to the requirements of a particular home, a local zoning or other development regulations may, without violating the provisions of this section, also attach specific location requirements to the approval of the group home, including the availability of such services and facilities as convenience stores, commercial services, transportation, and public recreation facilities."

Pursuant to these statutory provisions, the Adams County Association for Retarded Citizens in early 1976 purchased a house and sought to establish a group home in a single-family residential district in the City of Westminster.

In accordance with directions from city officials, the Association applied for a special use permit. Westminster City Ordinance No. 909 sets out the procedures and criteria for obtaining a special use permit.

Pursuant to this ordinance, a hearing was held before the Special Uses and Licenses Board and the Board recommended approval of the application. In considering the Board's recommendation the City Council held an additional hearing. Following this hearing, the City Council denied the application and adopted certain findings of fact.

The Association filed a complaint contesting the City's authority for such denial and requested the following forms of relief: a finding pursuant to C.R.C.P. 106(a)(4) that the City Council had abused its discretion and exceeded its jurisdiction; a declaratory judgment that the state statute was constitutional and that Ordinance No. 909 was unconstitutional; and an order requiring defendants to issue the required permit. Because the constitutionality of a state statute was involved, the Attorney General intervened in the case.

Trial to the court was held in November of 1976. At the conclusion of the hearing, the trial court made the following findings of fact: (1) relevant sections of Senate Bill 135 are constitutional; (2) the establishment of group homes for the developmentally disabled is a matter of statewide concern; (3) Ordinance No. 909 conflicts with the state statute; and (4) the Westminster City Council exceeded its jurisdiction and abused its discretion in denying the special use permit. On the basis of these findings, the trial court ordered the matter to be remanded to the City Council with directions to issue the special use permit. The City of Westminster appealed this order. The Association and the Attorney General cross-appealed asking that the judgment of the trial court be denominated a declaratory judgment as well as a judgment pursuant to Rule 106(a)(4). Because of our disposition of this case, we do not reach the issue presented by the cross-appeal.

## I.

This appeal presents several questions for review. As a preliminary matter, we address the question of whether the state statute is unconstitutional in that it attempts to regulate a matter of purely local concern and, thus, violates Article XX of the Colorado Constitution which grants home rule cities exclusive control over matters of local and municipal concern.

The legislature has declared "that the establishment of state-licensed group homes for the exclusive use of developmentally disabled persons is a matter of statewide concern." Section 31-23-303(2)(a), C.R.S. 1973 (1977 Repl. Vol.). Westminister City Ordinance No. 909 provides that "review criteria for granting or denying the license or special use permit shall be governed by *applicable statutes,* ordinances and written policies of the City." (Emphasis added.)

The City interprets its own ordinance as incorporating and making applicable the statutory criteria set forth in Senate Bill 135. Since the City has voluntarily chosen to follow the statutory mandate, this case presents

no challenge to the legislature's declaration that the location of group homes is a matter of statewide concern.[1]

In this posture, the constitutional issue need not be decided and the court's scope of review is limited to a review of the record pursuant to C.R.C.P. 106(a)(4) to determine whether the City Council abused its discretion or exceeded its jurisdiction in refusing to issue the special use permit.

## II.

We must decide whether the City Council in its denial of the special use permit complied with the statutory criteria, which it was required to do by the terms of its own ordinance. In denying the special use permit, the City Council adopted the following findings of fact:

"1. The facility will severely and adversely affect the single family characteristics of the neighborhood in which it is located.

"2. The facility will adversely affect the peace and quiet of the neighborhood and other activity which is likely to result from the proposed use.

"3. There is an attitude of general hostility in the neighborhood towards this proposed facility and that attitude will seriously interfere with the goals of the facility.

"4. That the proposed changes to the exterior of the building are inconsistent with the character of the surrounding neighborhood.

"5. That the proposed location is deficient with regard to the standards set forth in Section 30-28-115, Colorado Revised Statutes of 1973 as amended, relating to the availability of such services and facilities as convenience stores, commercial services, transportation and public recreation facilities. Specifically, the proposed facility is remote from all of the foregoing.

"6. That although the statute above cited declares that the establishment of state licensed group homes for the exclusive use of developmentally dis-

---

[1] The following language from the reply brief of Amicus Curiae Colorado Municipal League (page 4) is instructive on this point:

"The state statute regarding group homes for the developmentally disabled is clearly an 'applicable statute' within the meaning of the City's own ordinance. By the terms of that ordinance, the *statute* governs the choice of criteria to be applied by the City Council.

"If . . . the statute is intended to solely govern the choice of criteria which may be used in granting or denying the permit, then any other criteria set forth in the 'ordinances and written policies of the City' (as yet unidentified) may not be considered since such ordinances and written policies are not 'applicable.' This interpretation is the only reasonable and sensible interpretation of the Westminster ordinance. To interpret the ordinance otherwise would mean that the Council — in adopting the special use permit ordinance — would have intended that the ordinance require that the choice of criteria be governed by inconsistent statutes and local laws. A fair and reasonable construction, however, must be given the ordinance. *Wainwright v. City of Wheat Ridge,* 38 Colo. App. 485, 558 P.2d 1005 (1976). If the criteria contained in local laws and policies conflict with the statute's criteria, then the use of the criteria contained in the local laws and policies is not permitted by the terms of the Westminster ordinance and the only error by the Council was that it exceeded its jurisdiction under its own ordinance. The special use permit ordinance certainly does not conflict with the statute, and no issue regarding the statewide or local nature of the criteria is even raised in this case."

abled persons is a matter of state-wide concern, the determination of appropriate locations for such homes is a matter of discretion with the City Council and based upon the evidence before it, this City Council finds that the proposed location is not a proper one."

We hold that findings numbered 1, 2 and 3 above reflect the fact that the City Council considered impermissible factors in denying the special use permit. It is clear that the legislature by enacting Senate Bill 135 [*See* specifically sections 31-23-301(4) and 31-23-303(2), C.R.S. (1973 Repl. Vol.)] intended that group homes of this type be considered a residential use of property and that they be permitted in all residential zones, specifically including those zoned for single family dwellings. It is inconsistent with this intent for the City Council to base its denial of the special use permit on the adverse effects of the group home on the "single family characteristics of the neighborhood" and on "the peace and quiet of the neighborhood," in addition to the "attitude of general hostility in the neighborhood towards this proposed facility."

Clearly Senate Bill 135 was enacted by the legislature to preclude municipalities from barring group homes from neighborhoods on the basis of fears and stereotypes about handicapped persons. Findings numbered 1, 2 and 3 reflect these misconceived ideas.[2]

As Justice Mountain of the New Jersey Supreme Court noted in *Berger v. State,* 71 N.J. 206, 364 A.2d 993 (1976), the use of a dwelling: ". . . as a residence for a group functioning as a family entity substantially effectuates the purpose of the [single family] zoning provisions sought to be enforced. Moreover, it furthers the public interest of providing quality care for the handicapped children. Finally, the impact of [the group home] on legitimate local interests is slight when compared with the beneficial goals sought to be accomplished. Indeed, it is consonant with, not destructive of, the residential nature of the community. All of these factors unite to convince us that the zoning provisions cannot frustrate the State's operation of [the group home]." 364 A.2d at 999, 1000.

*See, Hessling v. City of Broomfield,* 193 Colo. 124, 563 P.2d 12 (1977).

### III.

Findings 4 and 5 are basically predicated on factors which may properly be considered under the terms of the statute. Section 31-23-303(2), C.R.S. 1973 (1977 Repl. Vol.) specifies that architectural design of the facility which is *substantially* inconsistent with the character of the neighborhood as well as the unavailability of certain designated services may be grounds for denial of the permit by the municipality.

Thus the denial of the special use permit by the City Council was based on both permissible and impermissible factors. We are unable to de-

---

[2] Testimony by persons living in the neighborhood where the proposed group home was to be located consisted primarily of concerns about potential danger ot people living in the neighborhood and about potential danger to people living in the neighborhood values.

termine how much weight the City Council gave to any one of these factors in its denial of the permit. For this reason, the City Council, applying only the appropriate statutory criteria, should reexamine the application for the special use permit.

Accordingly, we reverse the judgment of the trial court and return the cause to it with directions to remand to the City Council for a reconsideration of the record or a rehearing, as the Council deems advisable, to determine whether the special use permit should be issued.