GLENNON HEIGHTS, INC., a Colorado Non-Profit Corporation; Edward Morin, and Linda Morin, Bryan Darnell and Elizabeth Darnell, Joseph Hartman and Leora Hartman, Allan Van Inwegen and Eleanor Van Inwegen, Plaintiffs-Appellants,

v.

CENTRAL BANK & TRUST, Trustee; The State of Colorado; Dr. Raymond Leidig, Executive Director, Department of Institutions, State of Colorado; The City of Lakewood, a Municipal Corporation, Defendants-Appellees.

No. 81SA347.

Supreme Court of Colorado, En Banc.

Feb. 14, 1983.

Rehearing Denied March 7, 1983.

Bailey, Wilson, Wagenhals & Finegan, Walter L. Wagenhals, Lakewood, for plaintiffs-appellants.

J.D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., William Higgins, Asst. Atty. Gen., Denver, for defendants-appellees State of Colo. and Dr. Raymond Leidig.

LOHR, Justice.

The plaintiffs sought an order restraining the defendants from constructing and operating two group homes for the institutional care of developmentally disabled persons in a residential zoning district in Lakewood, Colorado. The Jefferson County District Court entered a judgment dismissing the complaint, and the plaintiffs appealed. We affirm the judgment of the district court.

The undisputed facts as presented in the parties' pleadings and other materials in the record are as follows. The plaintiffs are Glennon Heights, Inc., a non-profit corporation organized for the purpose of pursuing goals common to the residents of Glennon Heights subdivision in the City of Lakewood; and eight individuals who own certain properties in that subdivision. The defendants include the State of Colorado, the executive director of the Colorado Department of Institutions, and Central Bank & Trust ("bank"). The State of Colorado, through the Department of Institutions, is in the process of constructing two group homes on property owned by the bank in Glennon Heights, each home designed to house eight developmentally disabled persons and staff personnel. The state and the bank entered into a lease/purchase agreement for the property for an original lease term of one year and seventeen consecutive renewal terms of one year. Each new term commences upon appropriation by the general assembly of sufficient funds to the Department of Institutions to meet rental payments under the lease. The agreement provides that the lease shall terminate upon the expiration of any one-year term and the nonrenewal of the lease, upon the state's exercise of its option to purchase the property, upon the bank's election to terminate in case of default, or upon the expiration of the final one-year renewal period.

Lakewood, pursuant to its authority as a statutory city, has enacted zoning ordinances applicable to property within its jurisdiction. The group home sites are zoned R–1(A) Residential, and the construction of group homes for the developmentally disabled within such a district is not allowed without application for and approval of a special use permit. The state has not applied for a special use permit from Lakewood.

The plaintiffs filed a complaint and an amendment to the complaint, stating a total of seven claims for relief and seeking damages and an injunction to prevent the state's proposed use of the property. The state defendants filed a motion to dismiss three of the claims for relief, and motions for partial summary judgment on the two claims at issue here: that the state statutes relied upon by the defendants as authority for construction of the group homes without regard to local zoning ordinances constitute an improper abrogation of local authority, and that the lease/purchase financing arrangement is an illegal debt contracted by the state in violation of the Colorado Constitution. The plaintiffs also filed a motion for partial summary judgment on the former of these two claims.[1] The district court granted the defendants' motions and denied the plaintiffs' motion, and the plaintiffs appeal from the court's judgment dismissing their complaint.[2]

---

[1] The district court's order also refers to a summary judgment motion filed by the plaintiffs on the illegal debt claim, and denies it. However, the trial court docket sheet does not indicate that any such motion was filed by the plaintiffs and no such motion was designated in the record on appeal.

[2] The district court's order of dismissal was based on the following disposition of all seven of the plaintiffs' claims for relief: the first, fourth and fifth claims were dismissed for failure to state a claim for relief pursuant to the state defendants' motion to dismiss; the court on its own motion dismissed the third claim for failure to state a claim for relief separate and

The plaintiffs advance three arguments in support of their claim that the state has unlawfully disregarded local zoning ordinances in building the group homes. First, the plaintiffs claim that the statutes relied upon by the defendants, sections 31–23–301(4), 31–23–303(2)(a) and 30–28–115(2)(a), C.R.S.1973 (1977 Repl.Vol. 12), violate the constitutional right to procedural due process because the statutes effect an amendment to local zoning ordinances without notice and hearing. Second, they assert that the state has not followed a statutory requirement for notice and a hearing prior to amendment of a local zoning ordinance, relying on section 31–23–304, C.R.S.1973. Third, the plaintiffs contend that zoning is uniquely a matter of local concern and the state cannot usurp the authority of local governments by enacting state statutes affecting zoning within those localities. With regard to the illegal debt issue, the plaintiffs argue that the lease/purchase agreement violates *Colo. Const.* Art. XI, § 3 in that the financing scheme is tantamount to a debt obligation of the state.[3]

We address first the procedural issues raised by the defendants that the plaintiffs are not entitled to appeal from denial of their motion for summary judgment and that certain of the plaintiffs' arguments are not properly raised for consideration on appeal. We next consider the plaintiffs' arguments on their merits and conclude that the district court properly dismissed their complaint.

## I.

■ The state defendants argue that the plaintiffs may not take an appeal based on any arguments raised in their motion for summary judgment because the district court's denial of the plaintiffs' motion does not constitute a "final judgment" as required by C.A.R. 1(a)(1). We agree with the defendants that a denial of a motion for summary judgment is not an appealable order when it does not otherwise put an end to the litigation. *State v. Harrah,* 118 Colo. 468, 196 P.2d 256 (1948). In the present case, however, the district court order dismissing the plaintiffs' complaint not only denied their motion for summary judgment but also granted the defendants' motions, and thereby effectively put an end to the litigation without further ruling by the court. *See Jones v. Galbasini,* 134 Colo. 64, 299 P.2d 503 (1956). The plaintiffs are entitled to take an appeal from the judgment and advance any arguments properly raised and preserved for appeal.

■ The defendants also contend that the plaintiffs' arguments with regard to a statutory or constitutional right to notice and a hearing prior to enactment of state statutes that in effect amend local zoning ordinances may not be considered on appeal because these claims were not stated in the plaintiffs' complaint and were raised for the first time in support of their motion for summary judgment. We do not consider the plaintiffs' arguments as new claims for relief but as specific arguments in support of their general claim set forth in the complaint that the statutes relied upon by the defendants constitute an "unconstitutional and improper ... abrogation by the state of an area of concern to local government." Further, the district court specifically considered and rejected the alleged right to notice and a hearing. For these reasons, we choose to consider the merits of the plaintiffs' arguments.

---

apart from the other claims; the court granted the state defendants' motions for summary judgment on the second and seventh claims; and the sixth claim for relief against the City of Lakewood alone was noted by the court to have been previously dismissed on Lakewood's motion.

**3.** While the plaintiffs' notice of appeal states that they appeal the district court's order in its entirety, they have advanced arguments in

their brief relevant to only the two claims for relief that were challenged by the defendants' motions for summary judgment. We limit our consideration to the arguments advanced by the plaintiffs on appeal since they have not attempted to meet their burden of showing reversible error in the trial court's disposition of their other claims for relief. *See Slater v. Van Schaack & Co.,* 162 Colo. 201, 425 P.2d 302 (1967).

## II.

In support of its claimed exemption from local zoning ordinances in building group homes, the state relies on statutes enacted in 1975 as part of a comprehensive statutory scheme providing for a right to care and treatment for the developmentally disabled. Sections 27–10.5–101 to –135, C.R.S.1973 (1982 Repl.Vol. 11). Consistent with its purpose to afford care and treatment for developmentally disabled persons in the "least restrictive" environment, section 27–10.5–101(1)(b), the general assembly provided for the establishment of state-licensed group homes for the developmentally disabled within residential districts. In section 30–28–115(2)(a), C.R.S.1973 (1977 Repl. Vol. 12), the general assembly declared that

the establishment of state-licensed group homes for the exclusive use of developmentally disabled persons is a matter of statewide concern and that a state-licensed group home for eight developmentally disabled persons is a residential use of property for zoning purposes. The phrase "residential use of property for zoning purposes", as used in this subsection (2), includes all forms of residential zoning and specifically, although not exclusively, single-family residential zoning.

Essentially identical language appears in section 31–23–303(2)(a), C.R.S.1973 (1977 Repl.Vol. 12). The general assembly further modified the statutes granting zoning power to localities to provide that

[n]o statutory or home rule city or town or city and county shall enact an ordinance prohibiting the use of a state-licensed group home for the developmentally disabled which serves no more than eight developmentally disabled persons and appropriate staff, as a residential use of property for zoning purposes. As used in this subsection (4), the phrase "residential use of property for zoning purposes" includes all forms of residential zoning and specifically, although not exclusively, single-family residential zoning.

Section 31–23–301(4), C.R.S.1973 (1977 Repl. Vol. 12). We considered this statutory scheme in *Adams County Ass'n for Retarded Citizens, Inc. v. Westminster,* 196 Colo. 79, 580 P.2d 1246 (1978), and stated that the intent of the general assembly in enacting these statutes was to ensure that municipalities are precluded from barring group homes from residential neighborhoods on the basis of fears and stereotypes about handicapped persons.

The plaintiffs object to this statutory authorization for group homes in residential districts primarily because of the alleged adverse effect on their property values resulting from construction of such homes in their neighborhood. In considering the merits of the plaintiffs' arguments in support of their claim that the state has unlawfully disregarded Lakewood zoning ordinances in constructing the group homes, we address first their contention that the state has attempted to legislate on a matter of purely local concern and, thus, has abrogated powers exclusively vested in the municipality.

■ The question of whether the zoning of group homes for the developmentally disabled is a matter of local or statewide concern need not be resolved here because of the undisputed fact that Lakewood, during all times relevant hereto, was a city incorporated pursuant to statutory authority, *see* sections 31–2–101 to –109, C.R.S. 1973 (1982 Supp.), and had not chosen to adopt home rule pursuant to *Colo. Const.* Art. XX, § 6. We have previously held that the general assembly has power to legislate zoning regulations applicable to statutory cities, as distinguished from home rule cities. *Service Oil Co. v. Rhodus,* 179 Colo. 335, 500 P.2d 807 (1972). The power to promulgate zoning regulations in furtherance of the general health, safety and welfare is reposed in the legislative branch of the state government, and any such legislative powers of statutory cities are derived through a delegation of state power. *Nopro Co. v. Cherry Hills Village,* 180 Colo. 217, 504 P.2d 344 (1972). Such legislative powers to enact zoning regulations are delegated to statutory cities under section 31–23–301, C.R.S.1973 (1977 Repl.Vol. 12). Although home rule cities, in contrast to stat-

utory cities, enjoy the exclusive power to legislate on matters of purely local concern,[4] *Colo. Const.* Art. XX, § 6, such exclusive power has not been delegated to statutory cities by statute or constitution. The legislative powers granted to statutory cities under title 31, C.R.S.1973 are expressly subject to any restrictions or limitations imposed by state statute, and ordinances enacted by such cities must not be inconsistent with laws of the state. Sections 31–15–101(2) and 31–15–103, C.R.S.1973 (1977 Repl.Vol. 12). Several state statutes expressly limit the scope of a statutory city's power to enact zoning ordinances,[5] including section 31–23–301(4)'s proscription of municipal zoning ordinances prohibiting group homes for the developmentally disabled in residential districts.[6]

■ Because section 31–23–301(4) constitutes a legitimate limitation on the legislative powers delegated to statutory cities, we reject the plaintiffs' other two arguments that they were denied statutory and constitutional rights to notice and a hearing prior to enactment of the state statutes at issue. The plaintiffs' arguments are premised on their characterization of section 31–23–301(4) as, in effect, an "amendment" of a local zoning ordinance, which is governed by statutory and constitutional due process requirements. A municipality is required to provide public notice and a hearing prior to amendment of its own zoning ordinances under sections 31–23–304 and –305, C.R.S. 1973 (1977 Repl.Vol. 12) (1982 Supp.). In addition, some jurisdictions have held that

state or federal constitutional due process provisions require public notice and a hearing prior to enactment or amendment of municipal zoning ordinances. *See Masters v. Pruce,* 290 Ala. 56, 274 So.2d 33 (1973); *Bell v. Studdard,* 220 Ga. 756, 141 S.E.2d 536 (1965); *see also* 1 *Anderson, American Law of Zoning,* § 4.11 (2d ed. 1976). However, the statutes and cases cited are not controlling in the present case because they expressly apply only to amendments made by municipalities of their own ordinances and not to enactments of the state legislature.

■ While the property owners here have an interest in protecting their property from zoning changes affecting neighboring uses that allegedly diminish the enjoyment, utilization or value of their property, this interest does not amount to a vested right in the maintenance of a particular zoning classification. *Spiker v. Lakewood,* 198 Colo. 528, 603 P.2d 130 (1979); 1 *Anderson, American Law of Zoning,* § 4.27 (2d ed. 1976). It is also unquestioned that the state has authority to enact legislation for the welfare of developmentally disabled citizens under its police powers. In enacting the statutes presently under consideration, the legislature exercised its authority in a manner that takes into account the legitimate concerns of property owners and local government. The general assembly expressly reserved to municipalities the right to regulate several aspects of the construction and location of group homes in order to avoid adverse impacts on the neighborhood,

4. We recognize that the proper inquiry in a case involving conflict between an ordinance of a home rule city and a state statute is whether the subject matter of the ordinance is of local or statewide concern. The question of whether zoning of group homes for the developmentally disabled is a matter of local or statewide concern is best left for a case involving a home rule city. We also expressly declined to resolve this question in *Adams County Ass'n for Retarded Citizens, Inc. v. Westminster, supra,* where the zoning ordinances of a home rule city incorporated by reference all applicable state statutes, manifesting the city's intent to conform its own zoning regulations to state policy.

5. *See* section 34–1–305, C.R.S.1973; and sections 31–23–301(2), 31–23–303(2)(b), C.R.S. 1973 (1977 Repl.Vol. 12).

6. The plaintiffs state in their brief, without further elaboration, that section 31–23–301(4) operates prospectively only, relying on the language: "No statutory ... city ... *shall enact* an ordinance ..." (emphasis added). This assertion of the plaintiffs, unsupported by legal authorities or arguments, is so contrary to the apparent intent of the legislature to ensure "the fullest measure of privacy, dignity, rights, and privileges" to all developmentally disabled persons in Colorado that we consider it no further. *See* sections 27–10.5–101(1)(c), and 31–23–303(2).

as long as such regulation is not tantamount to prohibition of such homes within any residential district. Section 31–23–303(2)(c).[7] Additionally, there has been no contention by the plaintiffs that the general assembly in enacting these statutes did not follow constitutionally mandated procedures, including the requirements of open sessions, publication of bills, and passage of bills only upon a vote of the majority of elected representatives. *See Colo. Const.* Art. V, §§ 13, 14, 17, 20, 22.

■ Considering the circumstances involved here, we are not persuaded that the plaintiffs' constitutional right to due process was violated by not providing them with notice and a hearing. "The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation." *Cafeteria & Restaurant Workers Union v. McElroy,* 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230, 1236 (1961). We hold that enactment through the usual legislative process of the statutes here in question, which contain provisions designed to accommodate the interests of affected neighboring property owners, is consistent with the plaintiffs' right to due process. Accordingly, we find the plaintiffs' arguments relating to the state's authority to disregard Lakewood zoning ordinances to be without merit and

uphold the trial court's grant of the defendants' motion for summary judgment on this issue.

## III.

■ The second claim for relief dismissed by the trial court upon the defendants' motion for summary judgment was the plaintiffs' claim that the lease/purchase agreement between the bank and the state violates the constitutional prohibition against the state contracting "any debt by loan in any form." *Colo. Const.* Art. XI, § 3.[8] The plaintiffs contend that, while the agreement is not expressly framed in terms of a loan, its effect is to commit future legislatures to the payment of an obligation—the primary evil that the constitutional provision was intended to prevent.[9]

We agree with the plaintiffs' statement of the general purposes behind Article XI, Section 3, but we conclude that the lease/purchase agreement here does not violate that provision. We have stated that some of the indications of a debt in the constitutional sense are that the obligation pledges revenues of future years, that it requires use of revenue from a tax otherwise available for general purposes, that it is a legally enforceable obligation against the state in future years, or that appropriation by future legislatures of monies in

7. In *Adams County Ass'n for Retarded Citizens, Inc. v. Westminster, supra,* we relied on section 31–23–303(2)(c) to approve the city's consideration of several factors in determining whether to issue a special use permit for a group home but also held that the city had considered certain impermissible factors that went beyond statutory intent. The plaintiffs here have stated in their complaint and brief that the state failed to apply for a special use permit from Lakewood, but they do not predicate their claim for injunctive relief on the absence of such an application. We therefore do not consider this question, but we reaffirm our previous interpretation of section 31–23–303(2)(c) to allow cities several legitimate areas of regulation in considering an application for a special use permit.

8. The defendants urge that we uphold the trial court's order on this claim for relief on the procedural ground that the plaintiffs failed to designate in the record on appeal a copy of the amendment to their complaint that contains the

relevant claim for relief. *Cole v. Kyle,* 141 Colo. 492, 348 P.2d 960 (1960). We note that the plaintiffs designated for the appellate record their motion to amend the complaint, and such motion incorporates by reference the amendment, which was inadvertently excluded from the record. We elect to proceed to the merits of the plaintiffs' argument.

9. The plaintiffs also argue that the court erred in granting the defendants' motion because only certain parts of the lease agreement were attached to their motion, thus giving rise to disputed issues of material fact. *See Roderick v. City of Colorado Springs,* 193 Colo. 104, 563 P.2d 3 (1977). The portions of the lease that are provided in the record are not subject to dispute, and the plaintiffs cannot create an issue of fact merely by raising arguments in their brief. *Ginter v. Palmer and Co.,* 196 Colo. 203, 585 P.2d 583 (1978); *Sullivan v. Davis,* 172 Colo. 490, 474 P.2d 218 (1970).

payment of the obligation is nondiscretionary. *See In re Interrogatories by the Colorado State Senate,* 193 Colo. 298, 566 P.2d 350 (1977); *City of Trinidad v. Haxby,* 136 Colo. 168, 315 P.2d 204 (1957); *Johnson v. McDonald,* 97 Colo. 324, 49 P.2d 1017 (1935); *In re Senate Resolution No. 2,* 94 Colo. 101, 31 P.2d 325 (1933).

Under the present lease/purchase agreement, the bank has no legally enforceable right to require the general assembly to appropriate sufficient funds for renewal of the lease term every year or to require the state to exercise its option to purchase. The agreement provides that the Department of Institutions will use its "best efforts" to obtain funding every year for the rent payments, but that the appropriation of funds is a legislative act beyond the control of the department. Renewal of each lease term is specifically tied to appropriation of sufficient funds, and the lease terminates with no further obligation of the department if funds are not available.[10] Nothing in the agreement limits the discretion of the legislature. The plaintiffs' arguments that nonrenewal of the lease will ruin the credit of the state and will result in forced relocation of the disabled residents are matters that may affect the legislature's exercise of its discretion, but do not commit revenues available to future legislatures to the payment of rentals under the lease.

Additionally, we have recently upheld as constitutional a similar type of lease agreement challenged on the ground that it violated *Colo. Const.* Art. XI, § 6, which prohibits political subdivisions of the state from contracting certain debts. *Gude v. City of Lakewood,* 636 P.2d 691 (Colo.1981). In that case, we held that where rental obligations are contingent upon exercise of yearly renewal options, the agreement is not an unconstitutional debt. We see no significant distinction between the leasing arrangement at hand and the one in *Gude,* and conclude that the district court properly

granted the defendants' motion for summary judgment on this issue.

Judgment affirmed.

ERICKSON, J., does not participate.

---

**10.** One provision of the lease does require payment for holdover periods if the lease term is not renewed, but this provision in turn is "subject to the availability of sufficient Department of Institutions Funds for such purpose."