QUESTIONS PRESENTED AND CONCLUSIONS
ISSUE 1: Will TRANs constitute a debt in violation of Article XI, Section 3 of the Colorado Constitution?
ANSWER 1: No. TRANs are not "debt" and do not violate Article XI, Section 3 of the Colorado Constitution.
ISSUE 2: Will TRANs constitute a multiple-fiscal year direct or indirect debt or other financial obligation requiring a vote of the people under Article X, Section 20 of the Colorado Constitution ("TABOR")?
ANSWER 2: No. The TRANs legislation does not create a multiple-fiscal year debt or other financial obligation in violation of TABOR's voter approval requirement.
ISSUE 3: Will the proceeds from TRANs be included as state fiscal year spending under TABOR? ANSWER 3: No. The proceeds from TRANs are not subject to the spending limitations contained in TABOR.
 ANALYSIS Background Information
Federal transportation funds are administered by the Federal Highway Administration ("FHWA") under the Federal-Aid Highway Program and by the Federal Transit Administration ("FTA") for transit programs. Both FHWA and FTA funds are derived principally from federal excise taxes on motor fuels. The U.S. Congress has authorized expenditure of federal transportation funds on a multi-year basis since 1982 to provide stability in planning long term projects. The FHWA program has traditionally operated on a reimbursement system whereby the state spends funds on highway projects and then receives federal funds (typically 80% of the cost) for eligible projects. The FTA program operates under a grant system whereby the FTA and the recipient enter into a Full Funding Grant Agreement for new transit construction which details the total federal commitment and the local/state commitment.
Prior to 1995, federal highway funds could not be used to pay interest on any state issued financing. Pursuant to 23 U.S.C. § 122, amended in 1995, the states now may use federal highway funds to pay for principal, interest and other costs associated with notes or other instruments issued by the state.
Federal highway funds and state highway funds are directed into two separate state accounts: the State Highway Fund and State Highway Supplementary Fund. CRS § 43-1-220. These moneys are immediately available without further appropriation and are budgeted and allocated by the Colorado Transportation Commission pursuant to CRS § 43-1-113. HB99-1325 authorizes the use of future federal transportation funds and state matching funds to pay the holders of TRANs. TRANs will include provisions making payment of the notes contingent on an annual allocation of state and federal transportation funds by the Colorado Transportation Commission. Therefore, payments to holders of TRANs will occur based on such an annual allocation.
Discussion of Issue 1
Article XI, Section 3 of the Colorado Constitution provides, in pertinent part, that, "The state shall not contract any debt by loan in any form. . . ." The Colorado courts have defined "debt" as a pledge of revenues in future years which is legally enforceable against the state. Due to the language in HB99-1325 which makes the state's payment of TRANs contingent on annual allocation by the Colorado Transportation Commission, it is our opinion that TRANs are not debt in the constitutional sense.
In Glennon Heights, Inc. v. Central Bank Trust, 658 P.2d 872
(Colo. 1983), the Colorado Supreme Court held that an obligation subject to annual renewal was not an unconstitutional debt. The Court stated that constitutional debt requires the pledge of revenues in future years and a legally enforceable obligation against the state in future years. In Glennon Heights, a lease/purchase agreement between the state and a bank did not constitute debt in violation of Article XI, Section 3 of the Colorado Constitution because the obligation of the state to make payments in any fiscal year were subject to annual appropriation of the General Assembly and nothing in the agreement limited the discretion of the legislature to either appropriate or not appropriate.
Here, TRANs are payable from federal transportation funds and state matching funds annually allocated by the Transportation Commission and the legislation specifically states that nothing limits the Transportation Commission's discretion to make this allocation. TRANs do not constitute debt because no funds are committed beyond the current fiscal year and there is no legally enforceable obligation of the Transportation Commission to annually allocate funds for their payment. Therefore, TRANs do not constitute debt in violation of Article XI, Section 3 of the Colorado Constitution.
Discussion of Issue 2
Article X, Section 20 of the Colorado Constitution ("TABOR") provides in subsection (4)(b) that voter approval shall be required for "creation of any multiple-fiscal year direct or indirect district debt or other financial obligation whatsoever without adequate present cash reserves pledged irrevocably and held for payments in all future fiscal years." It is our opinion that the TRANs legislation does not create a multiple-fiscal year debt or financial obligation in violation of TABOR's voter approval requirement.
The Colorado Court of Appeals, in Board of County Commissioners v.Dougherty, Dawkins, Strand Bigelow, Inc., 890 P.2d 199
(Colo.App. 1994), held that the phrase "multiple-fiscal year direct or indirect debt or other financial obligation whatsoever" was no broader than the concept of a "debt by loan in any form" under Article XI of the Colorado Constitution. In Dougherty, Dawkins, the obligation of a county to make payments due in connection with lease/purchase financing did not create a multiple-fiscal year debt or other financial obligation because the obligation was contingent upon annual availability and budgeting by the county. The contract did not require that funds be spent in future years by the county.
The legal issues before the Court of Appeals in Dougherty, Dawkins
apply to the TRANs legislation in the same manner. TRANs will include provisions making payment of the notes contingent upon funds being annually allocated for that purpose by the Transportation Commission. Because the payments in any fiscal year will be subject to annual allocation by the Transportation Commission and because the legislation recognizes the sole discretion of the Transportation Commission to make an allocation, TRANs will not create a multiple-fiscal year direct or indirect debt or other financial obligation of the state in violation of the TABOR voter approval requirement.
Discussion of Issue 3
TABOR limits the state's fiscal year spending to a rate equal to inflation plus the percentage increase in state population in the prior calendar year. See Article X, Section 20(7)(a), Colorado Constitution. It is our opinion that the proceeds from TRANs are not subject to the spending limitations contained in TABOR.
The Colorado Supreme Court, in Nicholl v. E-470 Public HighwayAuthority, 896 P.2d 859 (Colo. 1995), held that bond proceeds raised by the E-470 Authority did not constitute an increase in the district's fiscal year spending and that expenditure of the proceeds on construction of the highway also did not impact the district's fiscal year spending.
The proceeds of issuance of TRANs will be used to pay amounts due on construction contracts as the project is built, with annual allocations by the Transportation Commission used to pay the holders of TRANs. In analogous financing transactions, e.g. master lease/ purchase agreements authorized by C.R.S. § 24-82-702, proceeds of issuance are not treated as reserve increases nor as state "fiscal year spending" for purposes of TABOR. As we understand, this treatment of proceeds is consistent with generally accepted accounting practices adopted by C.R.S. §24-77-101(2)(f) (TABOR state fiscal policies).
While the proceeds of TRANs are not included in state "fiscal year spending," a portion of the payments annually allocated by the Transportation Commission would be subject to the TABOR spending limitations. In master lease/purchase transactions, for example, the annual lease/purchase payments that are pledged, subject to annual appropriation, to pay the certificates of participation are treated as state fiscal year spending.
Only funds which are included in the definition of "fiscal year spending" in subsection (2) (e) of TABOR are subject to the TABOR spending limitation. Subsection (2) (e) of TABOR defines "fiscal year spending" as "all district expenditures and reserve increases except, . . . federal funds. . . ." Therefore, that portion of TRANs which are financed by and paid from annual allocations of federal transportation funds are not state "fiscal year spending." The portion of TRANs paid with annual allocations of state matching funds, however, would be within the definition of state "fiscal year spending" under TABOR.
LIMITATION TO CURRENT VERSION OF HB99-1325
This opinion is limited to issues under the Colorado Constitution relating to the issuance of TRANs pursuant to HB99-1325 as introduced in the Colorado General Assembly and assumes that the legislation will be in its current form. Should HB99-1325 be amended, the Attorney General reserves the right to alter or amend this opinion.
KEN SALAZAR
Attorney General